PEOPLE *v.* JURY.

1. CRIMINAL LAW—ARMED ROBBERY—EVIDENCE.

Conviction of defendant of armed robbery when evidence failed to show he was actually armed with a dangerous weapon *held*, sustained by record showing that complaining witness, a storekeeper, was placed in fear by defendant, the witness had a reasonable belief he might suffer injury, thereby submitted to defendant's taking of his property, and that defendant used and fashioned a combination of his hand and a covering over it in such a manner as to resemble a gun, causing the storekeeper to reasonably believe it was a dangerous weapon (CLS 1961, § 750.529).

2. SAME—ARMED ROBBERY—UNARMED ROBBERY—INSTRUCTIONS.

Conviction of defendant of armed robbery when evidence failed to show that he was actually armed with a dangerous weapon *held*, proper, where the jury received proper instructions on armed robbery and unarmed robbery and found defendant guilty of the more serious crime (CLS 1961, § 750.529).

REFERENCES FOR POINTS IN HEADNOTES

[1, 2]  46 Am Jur, Robbery §§ 14, 16.
Robbery by means of toy or simulated gun or pistol.  61 ALR2d 996.
[3]  53 Am Jur, Trial § 143.
[4]  20 Am Jur, Evidence § 536.
[5]  5 Am Jur 2d, Appeal and Error § 726.

3. SAME—ADMISSION OF INCRIMINATING STATEMENTS—OBJECTIONS.

Admission into evidence of defendant's statements given to peace officer next day after the crime of armed robbery was committed and prior to arraignment *held*, proper, where no objection was made to its admission during trial (CLS 1961, § 750.529).

4. SAME—ADMISSION OF EVIDENCE—PRESUMPTIONS.

Evidence admitted is presumed to have been lawfully admitted in prosecution for crime, where no proper objections were made at the trial.

5. APPEAL AND ERROR—QUESTIONS REVIEWABLE—OBJECTIONS.

Objections not raised during trial and passed upon by the trial court will not be heard by an appellate court for the first time.

Appeal from Recorder's Court; Ricca (John A.), J. Submitted Division 1 January 4, 1966, at Grand Rapids. (Docket No. 634. ) Decided June 14, 1966.

Edward Lewis Jury was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Samuel H. Olsen,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Luvenia D. Dockett,* Assistant Prosecuting Attorney, for the people.

*Ben Rosenthal,* for defendant.

HOLBROOK, J. Defendant Edward Lewis Jury was tried before a jury in recorder's court for the city of Detroit July 20, 1964, convicted of armed robbery, and sentenced to 3–15 years in prison August 6, 1964.

Defendant appeals and asserts error as follows:

(1) The court committed error in submitting to the jury the charge of armed robbery, when the testimony failed to show that the defendant was armed

with a dangerous weapon, or that defendant used any article fashioned in a manner to lead the person assaulted to reasonably believe it to be a dangerous weapon.

(2) Defendant's constitutional right to counsel and to remain silent precluded the admission of the statement taken from defendant before arraignment, the people not having shown that defendant was offered counsel or advised of his right to remain silent.

In dealing with the first claimed error, we turn to the armed robbery statute PA 1959, No 71 (CLS 1961, § 750.529 [Stat Ann 1965 Cum Supp § 28.797]), which describes the offense as follows:

"Sec. 529. Any person who shall assault another, and shall feloniously rob, steal and take from his person, or in his presence, any money or other property, which may be the subject of larceny, such robber being armed with a dangerous weapon, or any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon, shall be guilty of a felony."

The pertinent testimony for the people indicates that the defendant drove to a grocery store in a borrowed automobile on the evening of April 20, 1964, parking his car in front with the ignition on; that defendant entered the store at 10 or 15 minutes before closing time and purchased a pack of cigarettes and as the storekeeper opened the cash register to make change, the defendant demanded all of the money at a time when defendant's hand was covered and in a position that resembled a gun. The storekeeper was in fear and watched defendant take $4 out of the cash register. The storekeeper having a gun close by, went to where it was, grabbed it, and shot at the defendant, but missed, whereupon the defendant yelled out, "I give up." The defendant

was kept at gun point until a passerby, observing the situation, called the police. When the police arrived, the money was on the floor where defendant had dropped it behind the counter and the pack of cigarettes was on the counter.

The storekeeper testified concerning the manner of use and position of defendant's right hand being covered up resembling a dangerous weapon as follows:

"*Q.* (*By Mr. Connor*) All right, what happened at that time, as near as you can recall?

"*A.* Well, myself, I was sitting in the front, by the store there, by the radiator, where the door is, and I was reading the geographical magazine, I think it was geographical, and somebody came in. I didn't pay much attention. I generally look, you know, but then I didn't look, his position, as he was then, but I got up, as usual, as I would do to others, and go in behind the counter, and asked what he would have, and he says a package of Pall Mall cigarettes; and I gave him that, and he gave me the money there, and I gave him a nickle change, 31 cents, 35 cents, and I throwed—I had the cash register open. I opened the cash register, and he says, 'Give me that money,' and he had his [hand?] concealed as though he had a gun.

"*Q.* Would you give a demonstration of how he had his hand concealed?

"*A.* He had—his right hand was covered, as though he had a gun, covered.

"*Q.* Was it inside his coat?

"*A.* I couldn't say just now what—he had it covered.

"*Q.* You couldn't see his hand, at any rate?

"*A* No, couldn't see his hand, only it was covered, that is all; I thought he had a weapon.

"*Q.* You are indicating that his right hand would be up near his left breast?

"*A.* Right. * * *

(*Cross-examination by Mr. Soltez*)

"*Q.* Standing in front of you?

"*A.* Yes, and he asked for a pack of cigarettes.

"*Q.* Now, at that time, where were his hands?

"*A.* His hands were here.

"*Q.* Which hand?

"*A.* Right hand.

"*Q.* His right hand was where?

"*A.* Right here.

"*Q.* Well, on the outside, or what?

"*A.* Wrapped up, concealed.

"*Q.* It was concealed?

"*A.* Concealed, yes, like he had a weapon.

"*Q.* Just like this?

"*A.* That is right.

"*Q.* How far was the hand concealed, now?

"*A.* Like this.

"*Q.* Was any part of his hand not concealed?

"*A.* Wrapped up, I couldn't see it, is was wrapped up.

"*Q.* Wrapped up with what?

"*A.* I don't know, it was concealed.

"*Q.* I see.

"*A.* As though he had a gun.     *     *     *

(*By Mr. Soltez*)

"*Q.* When you went for your gun—

"*A.* Yes.

"*Q.* —at that time, did you think he had a gun, or didn't you?

"*A.* Well, I considered he had a gun.     *     *     *

"*Q.* Did he—what was this defendant wearing, do you know?

"*A.* I don't know just what he was wearing now, but—

"*Q.* No, at that time.

"*A.* I don't know what he was wearing, but, anyhow, I know he had the weapon concealed, and I was watching that, watching his movements, to see what he was going to do with it. I was trying to shield myself the best I could, get in readiness for the firing line.     *     *     *

"*Q.* Now, at that time, did you think he had a gun?

"*A.* Well, he had it drawn.

"*Q.* That isn't my question.

"*A.* I took it for granted that he had a gun, and that time, and he come on back after I gave him that, he come on back of the counter."

The defendant testified and denied that he held up the storekeeper, stating that he did purchase a pack of cigarettes and as he was on his way out of the store the storekeeper yelled, "Throw up your hands," and at the same time shot at but missed the defendant, and was kept covered by the storekeeper with his gun until the police arrived.

There was evidence that the storekeeper was placed in fear by defendant and had reasonable belief that he might suffer injury and thereby submitted to the defendant's taking of his property. If believed by the jury, this would be sufficient to constitute robbery. *People* v. *Kruper* (1954), 340 Mich 114.

The testimony for the people and denied by the defendant raised an issue of fact as to whether the defendant did in fact use and fashion a combination of his hand and a covering over it in such a manner as to resemble a gun causing the storekeeper to reasonably believe it was a dangerous weapon.

The jury received proper instructions on armed robbery and unarmed robbery and found defendant guilty of the more serious crime. No error was committed by the trial judge in this regard.

We will deal with defendant's claim that the trial court erred in admitting defendant's statement given Officer Keenan, April 13, 1964, the day following the alleged offense and prior to arraignment, and at a time when he did not have counsel and when he had not been informed that he had a right to remain silent.

The testimony of Officer Keenan, concerning this statement, was admitted without objection and is as follows:

"*Q.* All right, now, in connection with your duties, as a detective in charge of this case, did you have occasion to speak with the defendant, Edward Lewis Jury?

"*A.* I did, sir.

"*Q.* About what time and place did this take place?

"*A.* This was approximately 11:30, on the 13th, the day following his arrest.

"*Q.* All right.

"*A.* At that time, he was questioned regarding the holdup, for which he had been arrested.

"*Q.* I see. Who was present during that conversation?

"*A.* Well, my partner had returned, and he was in and out, that particular time.

"*Q.* I see. And was there anyone else, besides yourself—

"*A.* No one, just the defendant and myself.

"*Q.* All right. As near as you can recall, then, what were the questions you asked, and what were the replies he made?

"*A.* I had asked of his activities on the prior day, and he stated he had been from one friend to another, he had had a few drinks. He was on his way home, had borrowed a car from a friend. He was on his way home, when he was out of cigarettes. He went into a corner grocery store. He had asked to buy a pack of Pall Malls. At that time, he told the fellow to—his exact words escape me now. He stated that, at that particular moment, he decided he was going to hold the man up. He stated that— 'Give me all the money,' or words to that effect,— the exact words he gave me at that time escape me. I asked him if this was planned by himself, and he said, 'No, it came on me just at that particular moment.' He said he had no reason to, or why, it just happened.

"*Q.* Did you ask him if he had a gun?

"*A.* Yes. He stated he definitely had no gun.

"*Q.* All right. Did you ask him if he had indicated to the owner of the grocery store that he had a gun, in any manner?

"*A.* He stated that he gave—he gave no indication,—by that, he did not say that he had a gun. I asked him if he placed his hand in a position to indicate that he had a gun, and he stated that he did not."

Defense counsel cross-examined Officer Keenan at some length, but did not raise any issue as to the voluntariness of defendant's statement or confession.

Defendant cites several cases as authority for his position that error was committed in this case. They are: *Jackson* v. *Denno,* 378 US 368 (84 S Ct 1774, 12 L ed 2d 908, 1 ALR3d 1205); *People* v. *Walker* (*On Rehearing*) (1965), 374 Mich 331; *Malloy* v. *Hogan,* 378 US 1 (84 S Ct 1489, 12 L ed 2d 653); *Escobedo* v. *Illinois,* 378 US 478 (84 S Ct 1758, 12 L ed 2d 977); *Gideon* v. *Wainwright,* 372 US 335 (83 S Ct 792, 9 L ed 2d 799, 93 ALR2d 733); *Carnley* v. *Cochran,* 369 US 506 (82 S Ct 884, 8 L ed 2d 70); *Fay* v. *Noia,* 372 US 391 (83 S Ct 822, 9 L ed 2d 837); *Massiah* v. *United States,* 377 US 201 (84 S Ct 1199, 12 L ed 2d 246).

The cases of *Jackson* v. *Denno, supra,* and *People* v. *Walker, supra,* are authority for the rule that the defendant may object to the use of an alleged involuntary confession and must have a fair hearing and a reliable determination on the issue of voluntariness, not influenced by the truth or falsity of the confession. In Michigan the hearing must be had in the absence of the jury and admissibility determined by the judge on a separate record. If found to be voluntary, it is admitted, and the jury's consideration limited to its weight and credibility. If found

to be involuntary, it is suppressed. These cases are obviously not applicable here, for defendant was given every opportunity to object to the statement or to raise an issue as to its being involuntarily given.

Our Supreme Court presumes evidence admitted was lawfully admitted where no proper objections were made at the trial. *People* v. *Robinson* (1955), 344 Mich 353.

In *Malloy, supra,* petitioner, a witness in a State inquiry, invoked his privilege against self-incrimination refusing to answer questions. The Connecticut court held him in contempt. On appeal, the United States Supreme Court reversed and stated in part as follows (p 8):

"The Fourteenth Amendment secures against State invasion the same privilege that the Fifth Amendment guarantees against Federal infringement—the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty, as held in *Twining,** for such silence."

In *Escobedo, supra,* defendant's attorney was refused admittance to where defendant was being questioned prior to arraignment. Under those circumstances and without being advised that he could remain silent, defendant made incriminating statements which were admitted on the trial of the case. On appeal, the United States Supreme Court ruled that this was a denial of due process under the Sixth Amendment to the Federal Constitution made obligatory upon the States by the Fourteenth Amendment. The facts under the *Escobedo Case* are not analogous and therefore not applicable. Issues not raised in the trial court cannot be raised on appeal.

---

* *Twining* v. *New Jersey,* 211 US 78 (29 S Ct 14, 53 L ed 97).

*People* v. *Matteson* (1937), 280 Mich 218; *People* v. *Hallman* (1941), 299 Mich 657.

The facts in the cases of *Gideon* v. *Wainwright, supra,* and *Carnley* v. *Cochran, supra,* are not analogous in that defendants therein were denied representation by counsel at the trial. Defendant Jury was represented by counsel at the preliminary examination as well as at the trial.

*Fay* v. *Noia, supra,* dealt with facts not analogous to the case at hand. Petitioner therein had objected to the admission of his confession in the trial court. In Federal habeas corpus proceedings, the confession was stipulated as having been illegally obtained and relief was granted.

In the case of *Massiah* v. *United States, supra,* the facts are not analogous to the case at hand for the reason that the defendant therein on the trial maintained that incriminating statements had been unlawfully procured by Federal agents when defendant did not have counsel present, and were admitted over objection. On review, they were determined to have been involuntarily given and relief was granted.

Appellant has cited other cases to this Court and we have considered them. They do not have analogous fact situations, and therefore are not applicable to the case at hand.

Under the facts presented in this case, we conclude that there was no error committed by the trial court. Judgment of conviction affirmed.

FITZGERALD, J., concurred.

The late Judge WATTS took no part in the decision of this case.