STATE of Delaware, Plaintiff,

v.

**Marvin P. HARRIGAN, Defendant.**

Superior Court of Delaware,
New Castle County.

Submitted Sept. 2, 1981.

Decided Jan. 6, 1982.

Alan B. Levin (argued), Dept. of Justice, Wilmington, for plaintiff.

Richard H. Morse (argued), Young, Conaway, Stargatt & Taylor, Wilmington, for defendant.

## OPINION

LONGOBARDI, Judge.

This is the Court's decision on Defendant's *Rule* 35(a) motion challenging the sufficiency of the evidence to support two of his three robbery convictions.

Marvin P. Harrigan was convicted of robbing three individuals on the evening of December 23, 1977. For purposes of this motion, the facts related herein pertain to the testimony of the events during the robbery.

Bruce DeMayo, his seven year old sister, his father, George DeMayo, and his grandmother, Nora Windon, had just gotten into Mr. DeMayo's car behind the Classic Touch when the Defendant Harrigan ran up to the passenger side where Bruce DeMayo was sitting. With one hand thrust into his coat pocket, the Defendant opened the passenger door, pulled Bruce DeMayo out of the car, put his arm around his neck and told him, "Give me all your money or I'll shoot you." Harrigan then put his hand in Bruce's pocket and took out some money. At the

Court's request, Bruce demonstrated the actions of the Defendant.

As George DeMayo went to help his son, he was stopped by Harrigan saying, "Come any closer and I'll shoot him." The Defendant then commanded, "You, everyone get out of the car. Hit the deck. Hit the ground and put your—empty your pockets, put them on the trunk of the car." Bruce testified that the Defendant told his father, "Put your money on the car or I'll kill 'em." Mr. DeMayo emptied one pocket and put the money on the car. As his daughter started to cry and get frantic, Mr. DeMayo became angry and started toward the Defendant but was again warned, "I mean it, you come any closer and I'll shoot him, I mean it." The more Mr. DeMayo's daughter cried, the more he wanted to protect her but he did not move. Mr. DeMayo demonstrated to the Court what Harrigan did to lead him to believe his son might be shot.

Nora Windon also demonstrated what the Defendant did. He ordered, "Get out of the car, lady. I'll kill 'em both." Mrs. Windon was then told to put her pocketbook on top of the car. Since she could not reach that high, she threw it in the car and the Defendant took it out. Mrs. Windon did not get out of the car and down on the ground very quickly because she wears a brace on her back. Consequently, Harrigan put his foot on her ankle to hasten her actions and said, "Did you hear what I said, lady? Down on your—flat on your face." He then added, "You too, kid" and threw her granddaughter down on top of her.

Defendant was convicted of three counts of Robbery in the First Degree. A weapon was never seen in Mr. Harrigan's possession by any of the three victims. Defendant is now challenging whether there was sufficient evidence to support the convictions pertaining to the Robbery of George DeMayo and Nora Windon. Defendant maintains that: (1) there was no evidence to

show that either victim was threatened with the use of immediate force upon themselves; and (2) that there was no evidence to show that either victim thought that the Defendant displayed what appeared to be a deadly weapon. These two issues were not previously considered by the Supreme Court on appeal and must now be considered on their merits.

Count II of the indictment states, in part, that Marvin P. Harrigan "threatened the use of force upon George DeMayo with the intent to compel George DeMayo to deliver up approximately $220.00 in United States Currency." Count III of the indictment states, in part, that Marvin P. Harrigan also "threatened the use of force upon Nora Windon with intent to overcome Nora Windon's resistance to the taking of her pocketbook."

Defendant alleges that George DeMayo and Nora Windon were not threatened with the immediate use of force upon them and, therefore, an element of the crime was not proven beyond a reasonable doubt. He argues that the only threats of harm were directed at Bruce DeMayo. Defendant concludes that the evidence, at most, supports a finding of theft from George DeMayo and Nora Windon but not robbery.

This contention is resolved by first determining the meaning of the phrase, "threatens the immediate use of force upon another person" as it is found in 11 *Del.C.* § 831.[1] The Defendant interprets it to mean when one threatens "that person [the victim] with immediate *harm* in order to obtain property." (Emphasis added). In this interpretation, the Defendant erroneously substitutes the word "harm" for "use of force." These two terms are not synonymous and depending upon the facts of a particular case must not be so easily interchanged. Although the State concedes that the Defendant threatened to "harm" only Bruce DeMayo,[2] "harm" or "threat of harm" is not an element of robbery.

---

1. The pertinent part of 11 *Del.C.* § 831 reads:
   A person is guilty of robbery in the second degree when in the course of committing theft, he uses or threatens the immediate use of force upon another person with intent to
   . . . .

2. The evidence actually reveals through Nora Windon that Harrigan said he would "kill 'em both", meaning Bruce and George DeMayo.

The commentary of § 831 in the 1973 Delaware Criminal Code states:

> Robbery is ... forcible theft, and is committed whenever physical force is used, or its use is immediately threatened, to overcome resistance to theft or to compel another person to deliver up property or otherwise facilitate theft .... Note that the old requirement that the victim be put in fear is abandoned. This is reported to have raised difficulties in prosecuting some cases. Indeed, it is hard to see why a robbery's guilt should depend on the personal bravery of his victim.

Both the statute itself and this commentary make "use of force", not "harm", an element of robbery.

■ The term "force" or "use of force", as used in the definition of robbery, has no technical meaning peculiar to law and must be given its ordinary meaning. "Force" is "strength directed to an end", *Black's Law Dictionary* (Revised 4th ed. 1968); "power, violence, compulsion or constraint exerted upon or against a person or thing" or "strength or power of any degree that is exercised without justification or contrary to law upon a person or thing", *Webster's Third New International Dictionary* (1971). Thus, "force" generally means the capacity or power to persuade, convince, compel, restrain or coerce and does not necessarily imply physical violence. The phrase "threatens the immediate use of force upon another person", as found in 11 *Del.C.* § 831, would mean a show of power or strength sufficient to compel the giving up of property. This requires, at least, the giving up of property through intimidation.

■ With these meanings in mind, was there sufficient evidence to support the jury's finding that to obtain property from Nora Windon and George DeMayo the Defendant threatened use of "force" upon

each one of them? Defendant compelled the giving up of these two victims' property by intimidating them and threatening them with harm to a member of their family. Even without the accompanying threats of harm to Bruce, Defendant threatened the use of force upon each victim and compelled them to deliver up their money or prevented their resistance to the taking of their money by displaying what appeared to be a deadly weapon. Therefore, the Court concludes that there was sufficient evidence for the jury to find beyond a reasonable doubt that Harrigan threatened the immediate use of force upon George DeMayo and Nora Windon.

Defendant next argues that in the absence of a robbery victim actually seeing a deadly weapon, the State must obtain direct testimony from the victim as to whether he or she thought the robber had a deadly weapon or displayed what appeared to be a deadly weapon. Although Harrigan relies on *State v. Smallwood*, Del.Supr., 346 A.2d 164 (1975) and *People v. Jury*, 3 Mich.App. 427, 142 N.W.2d 910 (1966) for this proposition, neither of these cases holds that such direct testimony is necessary. In *People v. Jury*, the victim testified that he "took it for granted that he [the robber] had a gun" since the robber's hand was covered and in a position "as though he had a gun." However, there is nothing in *Jury* that says that this direct testimony is absolutely necessary to show an element of the crime.[3]

In *Smallwood, supra*, the Delaware Supreme Court held that the legislative use of "display" and "appears" is significant because they clearly imply an inquiry into the victim's reaction. The Court must focus on what took place from the victim's point of view, *i.e.*, what was manifested to any of the victim's senses. Title 11, Section 832(a)(2) of the *Delaware Code* covers the robber who intimidates by otherwise manifesting the presence of a deadly weapon

---

3. The Michigan armed robbery statute under which the crime was charged reads as follows:

   Sec. 529. Any person who shall assault another, and shall feloniously rob, steal and take from his person, or in his presence, any money or other property, which may be the subject of larceny, such robber being armed with a dangerous weapon, or any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon, shall be guilty of a felony.

even though it is not seen by the victim. *State v. Smallwood, supra*, 346 A.2d at 167. *Smallwood* does not state that the victim's thoughts and beliefs must be proven by expressions of fear from the victim's own testimony.

■ Defendant maintains that in the absence of such direct testimony from each victim, the jury would be left to speculate as to the beliefs of the victim and that such speculation is forbidden and may not be the basis of a conviction. This proposition is clearly erroneous. The absence of direct testimony alone does not mean that the jury is left to speculate as to the victim's beliefs. As in all cases, there are two types of evidence, direct and indirect or circumstantial, from which a jury may properly find the facts of a case. Circumstantial evidence, that is, the proof of facts or circumstances from which the existence or non-existence of other facts may reasonably be inferred, may be relied upon by the State to prove its criminal case. Such circumstantial evidence has long been accepted and used by the State in criminal cases. This elementary principle has been repeatedly approved by our courts. *Schaffer v. State*, Del.Supr., 184 A.2d 689, 691 (1962). To prove an element of a criminal offense by circumstantial evidence, the circumstances must lead one to infer or conclude beyond a reasonable doubt that the fact in issue is proven. *Holland v. State*, Del.Supr., 107 A.2d 920, 921 (1954); *Smith v. State*, Del.Supr., 213 A.2d 861, 862 (1965).

The mere fact that there is not direct testimony from George DeMayo and Nora Windon as to whether they actually thought that Harrigan displayed what appeared to be a deadly weapon, does not mean the State cannot prove its case. The State can prove the victim's beliefs through circumstantial evidence. Harrigan's explicit menacing actions of holding his hand in his pocket, coupled with threatening words, could be reasonably inferred as intending to create the belief that he was armed. The victims' actual giving up of property as a result of these words and other actions were sufficient to infer the victims' belief that Harrigan was armed. George DeMayo did not directly say that he thought the Defendant had a gun but testified as to the Defendant's threats and his reaction to those threats and demonstrated what the Defendant did to lead him to believe the Defendant might shoot his son. Harrigan intimidated George DeMayo by otherwise manifesting the presence of a deadly weapon and compelled him to give up his money. This circumstantial evidence is sufficient to constitute the display of "what appears to be a deadly weapon." Nora Windon's testimony of what the Defendant did and said to her, which resulted in her relinquishing her pocketbook and going to the ground, face down, is also reasonably sufficient to infer her belief that Harrigan was armed.

The testimony of these two victims concerning the Defendant's menacing behavior, coupled with threatening words and their response by giving up their property, was sufficient for the jury to infer beyond a reasonable doubt that the victims believed that Harrigan was armed or displayed what appeared to be a deadly weapon. The Court concludes that the evidence here is inconsistent with any rational conclusion other than that the victims thought the Defendant was armed.

■ For the reasons herein set forth, there was sufficient evidence for the jury to find beyond a reasonable doubt that the Defendant threatened the use of force upon each victim and displayed what appeared to each victim to be a deadly weapon. Defendant's *Rule* 35(a) motion is denied.

IT IS SO ORDERED.