**Marvin P. HARRIGAN, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted June 15, 1982.

Decided June 28, 1982.

**1192**

Richard H. Morse (argued) of Young, Conaway, Stargatt & Taylor, Wilmington, for defendant-appellant.

Alan B. Levin (argued), Deputy Atty. Gen., Wilmington, for plaintiff-appellee.

Before QUILLEN, HORSEY and MOORE, Justices.

PER CURIAM:

The defendant, Marvin P. Harrigan, was convicted of three counts of robbery in the first degree.* He was sentenced to three consecutive three year terms of imprisonment without eligibility for probation or parole. On a prior appeal, which consolidated a direct appeal and an application for postconviction relief, this Court by order affirmed the judgment of the Superior Court.

The defendant has filed a new application for postconviction relief pursuant to Superior Court Criminal Rule 35(a). The Superior Court in a thoughtful opinion denied the application. *State v. Harrigan*, Del.Super., 447 A.2d 1194 (1982). The defendant then brought the present appeal. We affirm.

The pertinent facts are set forth in the Superior Court opinion. In a nutshell, the three robberies resulted from a single incident wherein money was taken from each of three victims in one family, a son, a father and a grandmother. The defendant, with one hand in his coat pocket, as if he had a handgun, put his other arm around the son's neck and threatened to shoot the son. The defendant, who has already completed the three year sentence on the conviction of robbing the son, does not challenge that first count in this appeal. He does challenge the robbery convictions of the father and grandmother because (1) "there was no evidence tending to show that defendant threatened the immediate use of force upon them" and (2) "no evidence supported the conclusion that defendant displayed what appeared to be a deadly weapon to [the father] or [the grandmother]."

It should be noted that this Court has already decided in the prior appeal that, since the evidence justified the conclusion that the defendant took money from each of the three victims, the indictment could properly charge and the jury could properly find that there were three separate robberies. *McCoy v. State*, Del.Supr., 361 A.2d 241, 242–43 (1976); *Kile v. State*, Del.Supr., 382 A.2d 243, 245 (1978).

---

* The pertinent provisions of our robbery statutes are:

"§ 831. Robbery in the second degree; class D felony.

A person is guilty of robbery in the second degree when, in the course of committing theft, he uses or threatens the immediate use of force upon another person with intent to:

   (1) Prevent or overcome resistance to the taking of the property or to the retention thereof immediately after the taking; or

   (2) Compel the owner of the property or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft.

Robbery in the second degree is a class D felony."

"§ 832. Robbery in the first degree.

   (a) A person is guilty of robbery in the first degree when he commits the crime of robbery in the second degree and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: ...

   (c) The minimum sentence of imprisonment required by this section and § 4205 of this title for a first offense shall not be subject to suspension, and no person convicted under this section shall be eligible for probation or parole during the first 3 years of such sentence."

The defendant's contentions rest largely on the precise language of the second and third counts which allege in part that the defendant "in the course of committing theft displayed what appeared to be a deadly weapon, a handgun, and threatened the use of force upon [the father and grandmother respectively]".

As to the first contention in this appeal, we find it to be without merit for two independent reasons.

First, even assuming there was no verbally expressed or other manifested threat against the father and grandmother, an assumption which itself is probably not justified under the facts as demonstrated by the Superior Court opinion, as we see it, the situation inherently constitutes a threat of the use of force against the father and the grandmother. Obviously, the threat against the son if carried out necessarily leaves the defendant to deal with the other two named victims. The situation thus posed a direct threat of the use of force, in a personal harm sense, against the father and the grandmother.

Second, we agree with the opinion of the Superior Court, that under these facts, wherein there is a direct confrontation between the defendant and all the victims, the intimidation to the father and grandmother by the express death threat against the son was a sufficient threat of the immediate use of force against father and grandmother as well. Since "force" is not specifically defined in the Code, it is defined in accord with "its commonly accepted meaning". [11 *Del.C.* § 221(c) ]. We agree with the Superior Court that, in this direct confrontation setting, force includes compulsion beyond physical violence to each individual victim. The physical force used and threatened against the son was used "to overcome resistance to theft [and] to compel [the father and the grandmother] to deliver up property". See *Delaware Criminal Code with Commentary* (1973), Commentary on § 831, p. 257.

Turning to the second contention, which rests on the absence of direct testimony from either the father or the grandmother as to whether he or she thought the robber displayed what appeared to be a deadly weapon, we also make two points in finding the contention to be without merit.

First, while it is hard to see why the evidence does not include such direct testimony, the circumstances of record, the threats and yielding of money, as described in the Superior Court opinion, show beyond any reasonable doubt the apprehension of the two victims to the display manifested by the defendant. "[A] weapon may be manifested to a victim even though he may not see it." *State v. Smallwood*, Del.Supr., 346 A.2d 164, 167 (1975). From the viewpoint of the victims, it is clear that the defendant displayed what appeared to be a deadly weapon. *Id.* at 166.

Second, we do not think it is required by the statute for the State to prove that each victim definitely reached the subjective conclusion that defendant in fact had a deadly weapon. By the very language of the statute itself, the question is whether a defendant "[d]isplays what appears to be a deadly weapon". 11 *Del.C.* § 832(a)(2). Obviously, the defendant here intended to display what appeared to be a deadly weapon and it was made so to appear. A victim, who might entertain some doubt, not capable of his ascertainment, as to that appearance is subject to substantially the same criminality as the victim who accepts the appearance at face value.

The judgment of the Superior Court is affirmed.