Patrick WALTON, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 59, 2002.

Supreme Court of Delaware.

Submitted: Jan. 7, 2003.
Decided: April 25, 2003.

Sandra W. Dean, Esquire, Office of the Public Defender, Dover, for Appellant.

John Williams, Esquire, Department of Justice, Dover, for Appellee.

Before VEASEY, Chief Justice, WALSH, HOLLAND, BERGER and STEELE, Justices, constituting the Court en Banc.

VEASEY, Chief Justice, for the Majority.

In this appeal, we revisit the first degree robbery statute which requires the State to establish beyond a reasonable doubt both of the following elements: (1) that the defendant commits the crime of robbery in the second degree; and (2) in the course thereof, "displays what appears to be a deadly weapon."[1] The present case involves a bank robbery where the defendant passed to the bank teller a note in which the defendant demanded money and stated that he had a bomb. In an attempt to prove that the defendant "displayed" a bomb, the State presented evidence consisting of statements the teller made to a police detective in which she mentioned that she was scared and that the robber had his hand in his pocket. Neither the detective nor the teller could elaborate on the defendant's conduct or explain how the defendant's hand in his pocket appeared to be a bomb. We hold that a rational factfinder could not infer beyond a reasonable doubt from this evidence that the defendant "display[ed] what appeared to be a deadly weapon."

Also, we find no error in the Superior Court's evidentiary ruling refusing to admit in evidence defendant's offer of a hearsay statement made by the defendant to a psychiatrist. Because the defendant neither sought treatment from the psychiatrist nor did he seek to use the psychiatrist's expert opinion at trial, the trial judge did not abuse his discretion by excluding the statement.

The evidence establishes that the defendant committed the felony of second de-

---

1. Title 11, Section 832 of the Delaware Code provides, in part:
   (a) A person is guilty of robbery in the first degree when the person commits the crime of robbery in the second degree and when, in the course of the commission of the crime or of immediate flight therefrom, the person or another participant in the crime:
   * * *
   (2) Displays what appears to be a deadly weapon[.]

gree robbery. But the Superior Court's sentence for robbery in the first degree must be reversed because the evidence did not establish beyond a reasonable doubt the necessary statutory element that the defendant "displays what appears to be a deadly weapon," in the course of his commission of second degree robbery. Accordingly, the matter is remanded to the Superior Court so that the defendant may be sentenced for second degree robbery.

## Facts

On September 18, 2000, Patrick Walton walked into the West Dover branch of Mellon Bank and handed a bank teller, Gita Parikh, a note that read, "I have a bomb. Give me all your money and no dye pack." Parikh gave Walton $420 in traceable "bait money." Walton took the money and ran out of the bank.

The police arrived shortly after the robbery occurred. Detective Eric Richardson of the Dover Police interviewed Parikh. According to the detective's notes from the interview, Parikh did not see anything that appeared to be a weapon on the robber's person. She told the detective only that the suspect "did have his hand in his pocket which scared" her.[2] Significantly, she did not say that the hand in the pocket "appeared" to be a bomb or other deadly weapon.

The police recovered a latent fingerprint on the note used in the robbery. That print matched Walton's fingerprint. The police arrested Walton shortly after Parikh identified him in a photograph lineup. In a videotaped interview that began shortly after his arrest, Walton confessed to committing the robbery. He explained that he owed $500 to his alleged drug dealer and needed the money to settle his debt.

At trial in the Superior Court, Walton testified that he committed the robbery but denied actually having a bomb or displaying anything that appeared to be a bomb. His counsel asserted an affirmative defense of duress, claiming that he was forced to rob the bank, fearing his alleged drug dealer might kill him if he did not find money to repay his debt. Counsel for Walton argued that the State could not convict him of first degree robbery because he did not have a bomb nor did he make any physical gesture intended to convince Parikh that he had, or appeared to have, a bomb.

The jury convicted Walton of first degree robbery. The Superior Court sentenced Walton to life imprisonment.[3] This is Walton's direct appeal.

## Issues On Appeal

Walton raises two arguments on appeal. His principal argument is that the State did not produce sufficient evidence for a jury to convict him of first degree robbery. The single reference to Walton placing his hand in his pocket, he argues, does not amount to a "display" of "what appears to be a deadly weapon," as required by the statute.[4] He also argues that the trial judge erred by refusing to admit into evidence the testimony of a psychiatrist who could have recounted Walton's fear that his alleged drug dealer would murder him if he did not repay his debt. According to Walton, the testimony is a permissible hearsay statement under the diagnosis or treatment exception provided by Delaware Rules of Evidence ("DRE") 803(4).

---

**2.** Tr. trans. at 51 (July 3, 2001).

**3.** Because he was convicted of committing a felony on two prior occasions, Walton's first degree robbery conviction warranted a life sentence as an habitual offender. *See* 11 *Del. C.* § 4214(b).

**4.** 11 *Del. C.* § 832(a)(2).

### The State Did Not Present Sufficient Evidence To Find That Walton Displayed What Appeared To Be A Deadly Weapon

■ Walton asks this Court to overturn his first degree robbery conviction and remand his case to the Superior Court for a new sentencing for second degree robbery. To do so, we must find that no rational trier of fact, viewing the evidence in the light most favorable to the State, could have found beyond a reasonable doubt the essential elements of first degree robbery: the elements of second degree robbery and an additional aggravating factor. Walton concedes that the evidence supports the elements of second degree robbery: threatening the immediate use of force against another to compel that person to surrender or deliver up property.[5] The additional aggravating factor that elevates the crime to first degree robbery is that the defendant "displays what appears to be a deadly weapon."[6]

The State had difficulty proving the aggravating factor at trial. Parikh testified that she surrendered the money to Walton simply because the bank trained her to do so. She did not testify that Walton "displayed" anything other than the note. To establish the "display" element, the State tried to rely on an earlier statement that Parikh made to the investigating officer, Detective Richardson. At trial, the detective read aloud his notes from the interview, which mentioned that, while Parikh did not see any weapons, the suspect "did have his hand in his pocket which scared" the victim. But there was no evidence that the hand in the pocket "appeared to be a deadly weapon."

Courts rarely confront the obvious case where a defendant "displays what appears to be a deadly weapon" by brandishing a real or toy gun. Robbery often involves a subtle threat where the robber gestures toward a deadly weapon or a bulge hidden on the person of the robber so that a rational juror could find beyond a reasonable doubt that the bulge "appeared to be a deadly weapon."[7] The boundaries of the conduct punishable under the first degree robbery statute are marked by cases where the defendant has displayed what appears to be a concealed deadly weapon.

■ To address these difficult cases, this Court has adopted a two-part analysis to apply the "display" requirement in Section 832(a)(2).[8] First, the victim must *subjectively* believe the defendant has a weapon.[9] Second, the defendant's threat must be accompanied by an *objective* manifestation of a weapon.[10] The objective manifestation requirement attributes a broad meaning to the term "display" in order to punish the robber who gestures toward something that appears to be a concealed deadly weapon on the robber's person.[11]

---

5. 11 *Del. C.* § 831(a).

6. 11 *Del. C.* § 832(a)(2).

7. For example, this Court has upheld first degree robbery convictions where the defendant had "placed a hand in his jacket pocket and pointed it in the direction of one of the victims as to appear that the robber possessed a weapon," *State v. Smallwood*, 346 A.2d 164, 166 (Del.1975), and where a defendant pointed to a bulky object underneath his shirt. *Deshields v. State*, 706 A.2d 502, 505 (Del. 1998).

8. *Id.*

9. *Smallwood*, 346 A.2d at 166. This requirement is consistent with an essential element of the offense. Robbery "[r]equires the existence of a named human victim as a material element." *Coffield v. State*, 794 A.2d 588, 592 (Del.2002).

10. *See Deshields*, 706 A.2d at 507.

11. *Id.*

■ Walton first contends that the State did not prove that Parikh subjectively believed Walton was armed since Parikh testified at trial that she handed Walton the money because the bank trained her to do so as part of routine bank procedure under such circumstances. Nevertheless, Parikh told the detective that she was scared.[12] The jury could infer from Parikh's apprehension that she subjectively believed Walton was armed,[13] thus satisfying the subjective element of the State's case. But that is not the end of the inquiry.

Walton next argues that Parikh's statement to Detective Richardson, which merely refers to Walton having his hand in his pocket, without any elaboration, cannot constitute an "objective physical manifestation" sufficient to support the requirement of an objective physical manifestation that the defendant "displays what appears to be a deadly weapon." Walton relies on our decision in *Word v. State* where we held that the State could not prove the defendant "displayed" a gun when the bank teller could not see both of the defendant's hands, one of which may or may not have been in an empty bag in which the robber wanted the teller to put the money. The teller could not recall any conduct that amounted to an "objective physical manifestation" of a weapon.[14] The State counters by observing that Parikh observed some physical conduct (i.e., the hand in the pocket) that supported her subjective fear that Walton was armed, whereas the teller in *Word* based her apprehension solely on the threatening note.[15] The State contends that Walton's handing over the note and having his hand in his pocket constituted a sufficient basis for a rational jury to conclude beyond a reasonable doubt that this conduct satisfied the element of a "display" of "what appeared to be a deadly weapon." We disagree.

First, this conduct cannot be construed as a "display." [16] Second, the hand in the pocket cannot lead to a permissible inference of an "appearance" of a deadly weap-

12. The jury was permitted to place greater weight on Parikh's contemporaneous statement to the detective than to her testimony at trial. *Word v. State*, 801 A.2d 927, 928 n. 4 (Del.2002) (quoting 11 *Del. C.* § 3507, which states, "(a) In a criminal prosecution, the voluntary out-of-court prior statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value").

13. *See Harrigan v. State*, 447 A.2d 1191, 1193 (Del.1982) (holding that "the circumstances of record, the threats and yielding of money ... show beyond any reasonable doubt the apprehension of the two victims to the display manifested by the defendant").

14. *Word v. State*, 801 A.2d at 930–31. In *Word* we referred, among other cases, to a summary order of a panel of this Court in *McKamey v. State*, 1997 WL 45060 (Del. Supr.). *See Word*, 801 A.2d at 931. In *McKamey* we upheld a first degree robbery conviction upon evidence showing only that the defendant robbed a cab driver where the defendant "sat behind the driver in a moving cab and told the driver that he had a gun."

*Id.* (quoting *McKamey*, 1997 WL 45060 at *2). We said in *Word* that we did not "read our summary order in *McKamey* that was entered before our *Deshields* opinion as reliable precedent to permit a finding of 'displays what appears to be a deadly weapon' where the victim did not perceive any display or physical manifestation of a weapon." *Id.* We now conclude that the facts of *McKamey* cannot be substantially distinguished from the facts in *Word* or from the facts of the case before us. Therefore, in this en Banc case, we now overrule *McKamey* to the extent that it is inconsistent with the instant holding or the holding in *Word*.

15. *Word*, 801 A.2d at 932.

16. According to Webster's Dictionary, "display" means "to spread before the view: exhibit to the sight or mind: give evidence of." WEBSTER'S THIRD NEW INTERNATIONAL DICT. 654 (8th ed.2000). We have always accorded the word "display" its plain meaning in interpreting Section 832(a)(2). *See Smallwood*, 346 A.2d at 166 (quoting the identical definition from an earlier edition of Webster's Dictionary).

on. The solitary reference to Walton's hand in his pocket is not an objective physical manifestation that Walton displayed what appeared to be a bomb. The State asks us to apply the objective manifestation analysis to give "display" a limitless reading that would effectively permit a first degree robbery conviction to stand even if the defendant displays nothing at all.

The State did not present evidence to prove beyond a reasonable doubt that Walton supported his threat, "I have a bomb," with accompanying physical conduct that could be viewed objectively as "display[ing] what appears to be a deadly weapon." The sole evidence presented to describe Walton's conduct consisted of Detective Richardson's notes in which Parikh mentioned that the suspect "had his hand in his pocket which scared" Parikh. Richardson testified that Parikh's statement was a response to the question, "Did the suspect have any weapons?"[17] His notes merely reveal that Parikh did not see a weapon or anything that appeared to be a weapon, only that Walton had his hand in his pocket. This statement, without more,

does not even suggest that Walton made a gesture toward a bulge or other object on his person that "appeared to be a deadly weapon."[18]

The State's argument is tantamount to a contention that the mere verbal threat of a *bomb*—perhaps strapped to the robber's body hidden by clothing like a suicide terrorist—is distinct from a threat involving other deadly weapons and belongs in a separate category that ipso facto establishes a "display." But the logical extension of such a contention would be to create an entirely new statutory category for bomb threats that can be satisfied by merely claiming to have a bomb. This Court is not a legislative body and, therefore, cannot create such a special category for bomb threats over gun or knife threats. We are constrained by the limitations of the statute, and we may not ignore or trivialize the express statutory elements that are mandated by the General Assembly, requiring a "display" of "what appears to be a deadly weapon."[19]

The first degree offense hinges on the *conduct* accompanying the verbal[20] threat

17. Tr. trans. at 50 (July 3, 2001).

18. Other jurisdictions addressing statutes similar to Section 832 have also underscored the necessity of an objective inquiry because the first degree offense requires more than the threat of deadly force. *See Hughes v. State,* 185 Ga.App. 40, 363 S.E.2d 336, 337 (1987) (requiring "Some physical manifestation of a weapon" to sustain a first degree robbery conviction) (quotation omitted); *People v. Parker,* 417 Mich. 556, 339 N.W.2d 455, 459 (1983) (reasoning that the fact finder must determine that the defendant was "armed" with an article that leads the victim to believe the defendant possessed a deadly weapon); *State v. Fortune,* 608 So.2d 148, 149 (La.1992) (stating that the first degree robbery statute "requires the state to prove that the offender induced a subjective belief in the victim that he was armed with a dangerous weapon, and that the victim's belief was objectively reasonable under the circumstances"); *People v. Lo-*

*pez,* 73 N.Y.2d 214, 538 N.Y.S.2d 788, 535 N.E.2d 1328, 1332 (1989) (holding that the first degree robbery statute requires the defendant "by his actions, consciously manifest the presence of an object to the victim in such a way that the victim reasonably perceives that the defendant has a gun"); *In re Bratz,* 101 Wash.App. 662, 5 P.3d 759, 765 (2000) (adopting a two-part inquiry identical to, and relying upon, the Delaware approach articulated in *Deshields* and *Smallwood* ).

19. *See State v. Cephas,* 637 A.2d 20, 28 (Del. 1994) ("It is the General Assembly and not this Court which has the prerogative to legislate. This Court's role is to construe existing legislation.").

20. We use the word "verbal" in the dictionary sense to encompass both written and oral communications of the threat. *See* WEBSTER'S *THIRD NEW INTERNATIONAL*

of force rather than the *language* of the threat itself.[21] The "display" is the *conduct* establishing the additional, aggravating element that elevates second degree robbery to the more serious, first degree offense. Section 832(a)(2) was initially drafted to punish only those defendants that the State could prove were armed with a deadly weapon.[22] The deterrent value of the prior version of Section 832 was diminished to the extent the State could not convict a defendant because the weapon could not be recovered for trial. When the statute was amended to punish the "display of what appears to be a deadly weapon," the focus of the aggravating factor shifted to the victim's perception, which eased the State's burden of proof and broadened the range of punishable conduct. We have noted that a different offense, Section 1447, which prohibits the possession of a deadly weapon during commission of a felony, deters the defendant from carrying a deadly weapon during a robbery.[23] By holding out greater punishment for the robber who, at his peril, engages in conduct that leads the victim to believe the robber is armed, however, Section 832(a)(2) provides an additional deterrent by holding out the possibility of convicting the defendant who is armed but for whom the State cannot prove the possession charge under Section 1447. This additional deterrent value would be lost if defendants like Walton are convicted of first degree robbery, when no physical conduct supports the deadly threat.

■ A verbal threat cannot, itself, be a "display" of what "appears to be a deadly weapon."[24] If that were so, the elevation from second degree to first degree robbery would depend on the sensitivity of each particular victim solely to a verbal threat, and would add nothing to the elements of the felony of second degree robbery of which Walton is admittedly guilty and will be sentenced.[25]

DICT. 2542 (8th ed.2000) (defining verbal as "relating to words").

21. *See Johnson,* 1991 WL 28889 at *2 ("While we agree that a mere physical appearance [of a weapon] will suffice, there must be more than the victim's belief in the existence of a weapon.").

22. *See* 11 *Del.* C. § 832(a)(2) (1973) ("A person is guilty of robbery in the first degree when he commits the crime of robbery in the second degree and ... [i]s armed with a deadly weapon ..."); *See also Del.Crim.Code with Commentary,* Section 832 (1973) ("Robbery in the first degree is a very serious crime, carrying class B felony punishment, because it seems desirable to deter the use of dangerous and deadly weapons, even if simple robbery must occasionally happen.").

23. *See LeCompte v. State,* 516 A.2d 898, 903–04 (Del.1986).

24. A verbal threat is not sufficient to sustain a first degree robbery conviction because such a threat cannot be seen as a "display" to the victim's "mind." While this Court continues to define "display" as an exhibition to the "sight or mind," we believe a display "to the mind" necessarily references the defendant's conduct. Thus, a display to the mind refers to situations where the defendant physically gestures to a concealed weapon on his person. The "deadly weapon" is not displayed to the victim's sight, but rather to the victim's mind by forcing the victim *reasonably* to *infer* from the defendant's *conduct* the presence of a weapon. *See Smallwood,* 346 A.2d at 167 ("[O]ne who is made to feel by the sense of touch the presence of an apparent gun may never see it but there is recognition by his mind and that manifestation is just as effective ... as putting a gun in plain view.").

25. *See* 11 *Del.* C. § 203 (requiring that criminal statutes be construed to "promote justice and effect the purposes of the law as stated in § 201 of this title"); and 11 *Del.* C. § 201(4) (prescribing as one of the purposes of the criminal code that it "differentiate upon reasonable grounds between serious and minor offenses and to prescribe proportionate penalties therefor...."). In analyzing a similar statute, the Louisiana Supreme Court has noted that an inquiry into the defendant's conduct "excludes unreasonable panic reactions by the victim but otherwise allows the victim's subjective beliefs to determine whether

### The Trial Court Properly Excluded The Hearsay Statement Walton Made To The Psychiatrist Retained To Evaluate Walton's Mental Competence

Walton contends that the trial judge erred by refusing to admit in evidence the offer by Walton of a hearsay statement he made to a psychiatrist who evaluated Walton's competence to stand trial. During the evaluation, Walton told the psychiatrist that shortly before the robbery Walton's alleged drug dealer held a gun to Walton's head and threatened to kill him if he did not repay his $500 debt. Although the State presented a videotaped confession to the jury in which Walton recounted an identical statement to the police, Walton argues that the exclusion of the statement prejudiced his right to a fair trial because Walton was forced to testify in order to present these statements to the jury. Walton's testimony permitted the State to impeach his credibility by introducing into evidence his dishonesty crimes.

Walton relies on DRE 803(4), which permits the admission of hearsay statements "made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms ... or the inception or general character of the cause or external course thereof insofar as reasonably pertinent to diagnosis or treatment." We review for an abuse of discretion the trial judge's refusal to admit the hearsay statement.[26]

A statement made to a psychiatrist *may* be admissible under DRE 803(4).[27] To admit the statement, Walton was required to show that (1) his motive in making the statement was consistent with the purpose of treatment and that he was aware that the diagnosis depended on the accuracy of the statement; and (2) the psychiatrist reasonably relied on this kind of information in reaching his diagnosis.[28] If these requirements were satisfied, the trial judge would conduct a DRE 403 analysis to ensure that the probative value of the statement is not substantially outweighed by the danger of unfair prejudice.[29]

Walton did not make his statement "with the purpose of promoting treatment." Walton's statement was relayed to a court-appointed psychiatrist on the eve of trial. Under some circumstances, a hearsay statement may be admissible when made to a psychiatrist in anticipation of litigation, but the trial judge did not abuse his discretion by excluding Walton's statement because defense counsel did not plan to use the psychiatrist as an expert witness at trial.

While we recognize that DRE 803(4) abolishes the distinction between statements made to a treating physician and statements made to a physician hired in anticipation of litigation,[30] this departure from the common law is justified only as a practical acknowledgment that a jury may

---

the offender has committed first degree robbery or the lesser offense of simple robbery...." *Fortune,* 608 So.2d at 149.

26. *Capano v. State,* 781 A.2d 556, 586 (Del. 2001).

27. *Id.* at 624. Although 803(4) may be used in some circumstances to admit statements made to a psychiatrist, we have noted that such statements will *not* always "or even usually" be admissible. *Id.*

28. *Id.* (citing *United States v. Iron Shell,* 633 F.2d 77, 83–84 (8th Cir.1980)).

29. *Id.* In reaching his decision, the trial judge in the present case was mindful that applying 803(4) to statements made to a psychiatrist must be scrutinized carefully to ensure that the proponent of the statement is not using 803(4) to "circumvent the rule against hearsay." *See id.* at 625.

30. *See* John W. Strong, McCORMICK ON EVIDENCE § 278 (5th ed.) ("Courts were hesitant to admit statements made to doctors consulted only for diagnosis because when the declarant does not anticipate that the effectiveness of treatment depends upon the accuracy of his or her statement, the traditional

be unable to parse the distinction between admitting a statement for its truth and admitting the statement merely as a basis for an expert's opinion.[31] Because Walton neither sought treatment from the psychiatrist nor did he wish to introduce the statement as a basis for the expert's conclusions, the trial judge properly excluded the statement because its admission would stray too far from the purpose of DRE 803(4). This was not an abuse of discretion. Accordingly, we deny Walton's request for a new trial.

### *Conclusion*

Walton's sentence for first degree robbery is reversed, and this matter is remanded to the Superior Court for a new sentencing for second degree robbery. Pursuant to Supreme Court Rule 18, the time within which a motion for reargument may be filed in this matter is shortened to seven days from the date of this Opinion.

BERGER, Justice, dissenting.

The majority opinion significantly modifies the meaning of the phrase "displays what appears to be a deadly weapon" for purposes of a first degree robbery conviction. This new interpretation conflicts with several of our precedents and prevents the prosecution of many serious crimes at the level the General Assembly intended. I see no need to take the restrictive construction now adopted by the majority and, therefore, dissent.

For more than 25 years, Delaware courts have relied on the decision in *State v. Smallwood*[32] in deciding whether a defendant "displays what appears to be a deadly weapon." *Smallwood* explained that the word "display" means "exhibit to the sight or mind,"[33] and held that the "display" requirement of § 832 is satisfied if the weapon is "manifested to any of a victim's senses."[34] In that case, defendant had his hand in his jacket pocket and pointed it at the victim as if holding a weapon. Other first degree robbery convictions have been sustained where: 1) defendant had one hand inside a coat and made a verbal threat;[35] 2) defendant had his hands clasped together pointed at the victim and told her to "Hold it right there;"[36] 3) defendant tapped a bulge in his waistline and made a verbal threat;[37] and 4) defendant reached into his coat pocket while threatening the victims.[38] Ap-

---

31. DRE 803(4) tracks the corresponding Federal Rule of Evidence. The Advisory Notes to Federal Rule 803(4) states:

> Conventional doctrine has excluded from the hearsay exception ... statements to a physician consulted only for the purpose of enabling him to testify. While these statements were not admissible as substantive evidence, the expert was allowed to state the basis of his opinion, including statements of this kind. The distinction thus called for was one most unlikely to be made by juries. The rule accordingly rejects the limitation.
> Adv. Comm. Note to Fed.R.Evid. 803(4).

32. 346 A.2d 164 (Del.1975).

33. *Id.* at 166 (citing Webster's New International Dictionary Merriam (1964)).

34. *Id.* at 167.

35. *Harrigan v. State,* 447 A.2d 1191 (Del. 1982) (Defendant threatened to shoot one of the victims); *Wright v. State,* 1997 WL 317409 at *1 (Del.Supr.) (Defendant said, "Don't make me use this.").

36. *Williams v. State,* 494 A.2d 1237, 1238 (Del.1985).

37. *Mercado v. State,* 1986 WL 17411 at *1 (Del.Supr.) (Defendant told the victim he would "pull this piece" if the victim did not hand over the money.); *Deshields v. State,* 706 A.2d 502 (Del.1998).

38. *DeShields v. State,* 1988 WL 71442 (Del. Supr.).

*underlying rationale for the exception—a selfish treatment interest—does not exist.").

plying *Smallwood*, this Court also upheld a first degree robbery conviction where the victim could not see the defendant, and the only "manifestation" of a weapon was the defendant's verbal threat.[39]

Thus, until last year, the "display" requirement could be satisfied based only on the victim's belief that defendant possessed a deadly weapon and some objective manifestation of a weapon. In most cases, the objective manifestation involved defendant claiming to have a weapon while concealing his hand under a piece of clothing. In the one case where a conviction was overturned, there was no verbal threat or manifestation of a weapon. Defendant said "This is a holdup," but he never claimed to have a weapon and the victim never saw defendant's hands to know whether he appeared to be concealing something.[40]

Then, in a 2002 panel decision, this Court modified the long line of precedents reviewed above. In *Word v. State*,[41] defendant gave a bank teller a note that demanded money and stated, "I am armed." Defendant's hand was concealed inside a bag that he placed on the counter after passing the teller his note. The *Word* Court held that these facts were insufficient to support a first degree robbery conviction because the teller's belief that defendant had a gun was based on his note and not on the fact that his hand was concealed in a bag.

The *Word* Court made no effort to reconcile its holding with the recent precedent in *McKamey v. State*.[42] In that case, the victim was a cab driver who never saw anything that purported to be a weapon. The defendant was seated behind him and simply told the driver that he had a gun. This Court upheld his conviction of first degree robbery, citing *Smallwood, Harrigan, Deshields*, and *Mercado* for the proposition that a person displays what appears to be a deadly weapon when he "intimidates [the victim] by … manifesting the presence of such a weapon even though it is not seen by the victim."[43] The *Word* court ignored *McKamey*, calling it unreliable precedent.[44]

Now, we have the follow-up to *Word* and, again, the majority tries to make it seem that it is simply applying settled principles as announced in *Smallwood*. In *Smallwood*, however, the Court expressly recognized that a weapon is "displayed" to a victim if the weapon is exhibited to the victim's mind through any of the victim's senses.[45] Using that long-standing definition, the display requirement would be satisfied here. The victim saw a note saying defendant has a bomb, and also saw defendant's hand concealed in his pocket. The note contained the threat and the objective manifestation of that threat was the concealed hand, which could have been holding a detonator, grenade, or small explosive device. Under settled law, these facts are sufficient to support a conviction of first degree robbery.

The majority suggests that upholding this conviction would trivialize the statuto-

39. *McKamey v. State*, 1997 WL 45060 (Del. Supr.)

40. *Johnson v. State*, 1991 WL 28889 (Del. Supr.).

41. 801 A.2d 927 (Del.2002).

42. 1997 WL 45060 (Del.Supr.).

43. *Id.* at *2.

44. The majority now acknowledges that *Word* overruled *McKamey*. The majority does not, however, explain how it happened that our recent precedent was overruled without consideration by the Court *en banc*. *See:* Internal Operating Procedure VI(6), mandating *en banc* consideration before overruling a prior decision of this Court.

45. 346 A.2d at 165.

ry elements of the crime of first degree robbery. If that is so, then the "display" element has been trivialized for 25 years. This Court has always required a verbal threat and some objective manifestation of that threat. In almost every case, the objective manifestation was a hand concealed under clothing. The victim generally did not see the weapon or even the outline of a gun-shaped object in the defendant's concealed hand. All the victim saw was the concealed hand. Here, too, the victim saw a concealed hand—the same "conduct" that satisfied this Court in the past.

Finally, I dissent because the majority's construction of the statute is preventing an important category of serious crimes from being prosecuted to the extent intended by the General Assembly. A person who robs a bank or other business establishment presents a grave threat to its employees and any members of the general public who happen to be there during the robbery. If the robber threatens the victim by saying he has a gun or a bomb while concealing his hand in a pocket or bag, under the majority opinion, he will not be subject to prosecution for first degree robbery. Indeed, if the alleged weapon is a bomb, it is unclear from the majority opinion whether anything short of waving the device in plain sight would suffice as a "display" of what appears to be a deadly weapon. Yet the potential presence of a deadly weapon greatly increases the risk of harm to all who are present, since the victim, and well-meaning bystanders, may react by attempting to "disarm" the robber through force or with weapons.

In sum, I would not modify our long line of precedents on the meaning of the "display" element of first degree robbery. Our prior interpretation of the statutory language was settled, clear and readily understood by prosecutors and defense lawyers. In my view, that precedent gave

full effect to the intent of the General Assembly and full protection to the public. I would affirm defendant's conviction of first degree robbery. Accordingly, I dissent.