Claude MITCHELL, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 135, 2009.

Supreme Court of Delaware.

Submitted: Nov. 18, 2009.
Decided: Dec. 8, 2009.

Kevin P. O'Neill, Wilmington, DE, for appellant.

Danielle J. Brennan, Department of Justice, Wilmington, DE, for appellee.

Before STEELE, Chief Justice, BERGER and RIDGELY, Justices.

STEELE, Chief Justice:

Claude Mitchell robbed a bank by threatening that someone would shoot the teller and bank patrons. Mitchell appeals his conviction for First Degree Robbery, asserting that the prosecution presented evidence sufficient only for Second Degree Robbery, and impermissibly elicited statements about Mitchell's prior convictions that constituted manifest injustice. Mitchell's written and oral statements implied his control of a deadly weapon and created a reasonable perception of a genuine threat. The trial judge properly intervened after Mitchell interjected his earlier conviction into the case and the prosecutor abided by that judge's guidelines for questioning. Therefore, we **AFFIRM.**

### FACTUAL AND PROCEDURAL HISTORY

Mitchell walked into the Governor's Square Wachovia Bank, strode past the line of waiting customers, and presented the teller with a note. The note read, "That man behind me has a gun. Please give me all of your cash. Do not get shoot

[sic]." With no one standing behind him, Mitchell reiterated his threat, "There's a guy in the car with a gun and I don't want to hurt anybody."

The teller requested his account number, until Mitchell again threatened, "If you don't give me the cash, then I'm going to shoot and everybody else going to get hurt." The teller handed over $741, including two $50 bait-bills. Mitchell fled the premises, entered the passenger side of a Toyota with New Jersey plates, which then headed the wrong way down the shopping center's one-way lane.

When the police executed a search warrant of Mitchell's trailer, they found clothing he wore during the robbery, $171 cash, the two bait-bills, and the demand note. Mitchell testified that his driver had robbed him at gunpoint with her gun.

At trial, Mitchell stated, "I would never threaten to kill a person. I'm a Christian, and I don't have any guns." The prosecutor repeatedly questioned that statement's veracity, and just as Mitchell conceded, "I was accused of robbing-," the trial judge interjected to address counsel at sidebar. The prosecutor resumed his cross-examination; Mitchell neither moved for a mistrial, nor requested a curative instruction.

During the State's cross-examination, Mitchell's probation officer testified that he worked for a law enforcement agency, and had scheduled an appointment with Mitchell. The prosecutor elicited testimony regarding Mitchell's communications during this appointment. At certain times, the trial judge interjected *sua sponte* to prevent testimony regarding Mitchell's earlier conviction.

Mitchell asserted duress as an affirmative defense. The jury nevertheless found him guilty of First Degree Robbery. Mitchell appeals from that conviction.

## STANDARDS OF REVIEW

### 1. First Degree Robbery Conviction

We must determine after viewing the trial evidence, in the light most favorable to the prosecution, whether a rational trier of fact could have found that the State established the essential elements of First Degree Robbery beyond a reasonable doubt.[1] We review the trial judge's formulation and application of law that led to his legal conclusions, and the jury's findings for sufficient evidentiary support and logical and orderly deduction.[2]

### 2. Alleged Prosecutorial Misconduct

▮▮▮▮ We review alleged prosecutorial misconduct for harmless error, if defense counsel timely and specifically objected, or if the trial judge interjected *sua sponte*.[3] Otherwise, we review for plain error that clearly prejudiced a substantial right and jeopardized the trial's fairness and integrity.[4] We limit our review for plain error to "material defects which are apparent on the face of the record, which are basic, serious, and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[5]

## ANALYSIS

### 1. Sufficient evidence inferred Mitchell's control of a gun

▮▮▮▮ To convict a defendant of First Degree Robbery, the State must prove

---

1. *Word v. State,* 801 A.2d 927, 929 (Del.2002).

2. *Downs v. State,* 570 A.2d 1142, 1144 (Del. 1990).

3. *Baker v. State,* 906 A.2d 139, 148 (Del.2006).

4. *Id.*

5. *Id.* at 150.

that the victim subjectively believed the defendant's objectively manifested control of a deadly weapon.[6] A prosecutor may show that the defendant implied his control of a deadly weapon, by words or by conduct.[7]

Mitchell asserts that *Walton* requires us to reverse his conviction, because the State did not present evidence of physical conduct that objectively supported his threat.[8] In *Walton*, we held that the defendant's placing his hand in his pockets did not objectively substantiate his threat, "I have a bomb." [9]

Following *Walton*, however, the General Assembly amended the First Degree Robbery statute to include orally threatening the use of a deadly weapon.[10] The synopsis of Section 832(a) explains that "any person represents by word or conduct that they are in possession or control of a deadly weapon is committing a more serious crime than if there were no such representations." [11] The General Assembly intended First Degree Robbery to "apply whenever a criminal intends to intimidate a robbery victim by threatening the presence of a deadly weapon, regardless of whether the intimidation is accomplished by a physical display of what appears to be a deadly weapon or a verbal threat or other conduct that clearly implies that the criminal is so armed." [12]

■ Intimidation, under § 832(a), turns on the victim's perception of a poten-

tially deadly threat—not the actual deadliness of the threat. Just as a reasonable victim does not pause to calculate the potential deadliness of a threat to his life—but acquiesces to his assailant's demand, the statute does not distinguish between degrees of threats to a victim's life. Because unsubstantiated threats can effect the same result as substantiated threats, each act carries equal culpability. Under § 832(a), the State must only prove that the victim reasonably perceived a threat and the defendant's manifestation of a threat to use a deadly weapon.

■ Sufficient evidence supports the jury's findings that the teller believed Mitchell could cause someone to shoot her or others, and that Mitchell threatened the teller with written and oral statements. The trial judge correctly formulated and applied the law, and the jury's verdict logically follows the evidence; we should not—and will not, reverse their verdict.

## 2. The prosecutor did not improperly elicit inadmissible, prejudicial evidence

■ We analyze alleged prosecutorial misconduct for "statements' individual and cumulative effect." [13] Only if the prosecutor misconducts himself on multiple occasions will we consider (1) the closeness of the case; (2) the centrality of the issue

---

6. *Word*, 801 A.2d at 931; *Walton v. State*, 821 A.2d 871, 874 (Del.2003).

7. 11 *Del. C.* § 832(a)(2). "A person is guilty of robbery in the first degree when the person commits the crime of robbery in the second degree and when, in the course of the commission of the crime ... the person ... [d]isplays what appears to be a deadly weapon or represents by word or conduct that the person is in possession or control of a deadly weapon."

8. *See Walton*, 821 A.2d at 876.

9. *Id.*

10. 11 *Del. C.* § 832(a)(2).

11. *Id.*

12. *Synopsis*, 74 Del. Laws, c. 93.

13. *Baker*, 906 A.2d at 151 n. 22 (citing *Swan v. State*, 820 A.2d 342, 356 (Del.2003)).

affected by error; and (3) the steps taken to mitigate the error.[14]

 Mitchell alleges that the prosecutor impermissibly elicited testimony from him about an earlier conviction and from Mitchell's probation officer about Mitchell's probationary status. During his cross-examination of Mitchell, the prosecutor questioned Mitchell's veracity within the bounds of the trial judge's instruction. When Mitchell voluntarily began to discuss his earlier conviction, the trial judge quickly intervened to prevent prejudice. The prosecutor stayed within the bounds of the trial judge's instruction for the remainder of his cross-examination. While the prosecutor cross-examined Mitchell's probation officer, the trial judge *sua sponte* interjected to prevent the jury from hearing about the earlier conviction. The prosecutor did not impermissibly elicit the probation officer's responses, and his testimony did not manifestly taint the jury.

Assuming, *arguendo*, that Mitchell has shown the jury heard *any* improper information, he has not clearly shown a manifest injustice on the basis of individual statements or on unfairly prejudicial cumulative effect. Mitchell has not demonstrated that the trial judge committed error, much less plain error.

## CONCLUSION

The evidence supports the jury's conclusions that Mitchell claimed to have a gun and threatened the teller with it. The trial judge maintained the trial's fairness and integrity by interjecting to prevent any prejudice to Mitchell's substantial rights. For the foregoing reasons, we **AFFIRM** the judgment of conviction.

---

**14.** *Baker*, 906 A.2d at 149 (citing *Hughes v. State*, 437 A.2d 559, 571 (Del.1981)).