SUPERIOR COURT
OF THE

RICHARD F. STOKES
JUDGE

SUSSEX COUNTY COURTHOUSE
1 THE CIRCLE, SUITE 2
GEORGETOWN, DELAWARE 19947
TELEPHONE (302) 856-5264

January 18, 2017

Alonzo J. Payne
SBI# 00398336
SCI
P.O. Box 500
Georgetown, DE 19947

Christopher S. Koyste, Esquire
709 Brandywine Blvd.
Wilmington, DE 19809

RE: *State of Delaware v. Alonzo J. Payne*, Def. ID# S1308012898A (R-1)

Date Submitted: November 9, 2016

Dear Mr. Payne and Mr. Koyste:

Pending before the Court are postconviction matters in this case. Alonzo J. Payne ("defendant") filed a motion for postconviction relief pursuant to Superior Court Criminal Rule 61 ("Rule 61"). Christopher S. Koyste, Esquire was appointed to represent defendant in connection with that motion ("Postconviction Counsel"). Postconviction Counsel has filed a motion to withdraw. Because defendant's Rule 61 motion contains no valid claims, it shall be summarily dismissed. This is my decision granting Postconviction Counsel's motion to withdraw

1

and denying the motion for postconviction relief.

On February 26, 2014, a jury found defendant guilty of the charges of robbery in the first degree, possession of a firearm during the commission of a felony, and tampering with physical evidence. It found him not guilty of a charge of conspiracy in the second degree. On May 23, 2014, defendant was declared an habitual offender pursuant to 11 *Del. C.* § 4214(a). He was sentenced as follows. As to the robbery in the first degree conviction, he was sentenced as an habitual offender to 25 years at Level 5. With regard to the possession of a firearm during the commission of a felony conviction, he was sentenced as an habitual offender to 25 years at Level 5. On the conviction for tampering with physical evidence, he was sentenced to two years at Level 5, suspended for 1 year of probation at Level 3.

Defendant appealed to the Supreme Court, which affirmed the judgment below.[1] The thorough recitation of the facts in the Supreme Court's decision follows.

> (2) On August 16, 2013, Darryl Hutt ("Hutt") left work and cashed his weekly paycheck of $280 at the Service General. Hutt then walked to the apartment of Ashley Drummond ("Ashley") to find his cousin Shawn Smith ("Smith"). When Hutt arrived at the apartment, Smith was not there, but Ashley's brother Yahi Drummond ("Yahi"), her cousin Teuntay Drummond ("Teuntay"), and Payne were there. Shortly after Smith arrived, Hutt and Smith left the apartment.
> (3) Smith and Ashley had been arguing throughout the day and continued to argue over the phone after Smith left the apartment. Yahi overheard the argument and called Smith. During that conversation, Smith told Yahi that he and Hutt were going to the Service General to cash Smith's paycheck. Once they arrived, Smith went inside, and Hutt remained in the car to count his money. A black Cadillac pulled into a nearby parking spot. Three males got out and approached Hutt's window. Hutt testified that he was "struck" and then felt a "snatch on [his] leg," after which his money was gone. When Hutt looked up, he noticed that a man wearing a white shirt and red shorts had a gun pointed at him.
> (4) Smith exited the Service General while the three men were walking back to the Cadillac. Smith recognized the three men as Payne, Teuntay, and Yahi. Smith

---

[1] *Payne v. State*, 2015 WL 1469061(Del. Mar. 30, 2015).

testified that Payne was wearing a white shirt and red shorts. Hutt told Smith that the three men had just robbed him. Smith approached Payne and asked for the money back. Payne refused, and the three men drove off in the Cadillac. Later, Smith and Hutt went back to Ashley's apartment to ask for the money back, but Payne refused again.

(5) Smith and Hutt reported the incident to the Georgetown Police Department. In addition to describing Payne's white shirt and red shorts, Hutt reported that, of the money stolen, one of the twenty-dollar bills and one of the ten-dollar bills were torn. The police responded immediately. Upon arriving at Ashley's apartment complex, officers identified Payne by his clothing. One of the officers drew his weapon and ordered everyone to put their hands up. Payne ran into Ashley's apartment. About thirty seconds to a minute later, Payne reappeared at the front door and then exited the apartment. One of the officers then took Payne into custody. When the police searched Ashley's apartment, they found a black revolver under a couch. Tamara Midgette ("Midgette"), who was inside Ashley's apartment during the arrest, testified that Payne ran into the apartment, hid something under the couch, and gave her $179. FN1 The money the officers recovered from Midgette included a twenty-dollar bill and a ten-dollar bill with tears matching those Hutt described.[2]

> FN 1 Detective Bradley Cordrey testified that $129 was removed from Midgette and then an additional $50 was recovered "where she had hidden it in another location." Midgette testified that, "[Payne] had ran in and hid something under the couch and hid on the floor and threw me $130."

On appeal, defendant argued " that the trial court should have declared a mistrial because a witness informed the jury of Payne's previous incarceration."[3] This disclosure occurred during an exchange between defendant's trial counsel and Smith where Smith stated he did not know defendant until later because defendant was "locked up" when Smith started dating Ashley Drummond. This Court immediately struck the phrase "locked up" and told the jury to disregard it. Defendant's trial counsel then moved for a mistrial; the trial court denied the motion. Defendant argued on appeal that this denial was an abuse of discretion. The Supreme Court

---

[2] *Id.* at *1.

[3] *Id.* at *2.

3

employed a *Pena*[4] analysis where it weighed:

> "(1) the nature and frequency of the comments; (2) the likelihood of resulting prejudice; (3) the closeness of the case; and (4) the sufficiency of the trial judge's efforts to mitigate any prejudice." FN 8[5]

> FN 8 *Smith v. State*, 963 A.2d 719, 723 (Del. 2008).

After analyzing all four *Pena* factors, the Supreme Court concluded that the trial court was within its discretion in denying defendant's motion for a mistrial.

The Supreme Court's mandate was dated April 15, 2015. Defendant filed his postconviction motion on May 15, 2015. In that motion, he asserts the following claims.[6]

## Ground 1

Denial the Jury the right to see victims [sic] statements

Judge denies the Jury note after my Attorney and Prosecutor agreed to the victims [sic] statement.

## Ground 2

Effective Assistance of Counsel

My attorney never put in no [sic] motions that I ask him to put in on my behalf. Did not represent me as he should on his cross examining.

## Ground 3

Fail to properly identify me (suspect)

The victim never Identified me in trial.

---

[4] *Pena v. State*, 856 A.2d 548, 550 (Del.2004) ("*Pena*").

[5] *Payne v. State, supra* at *2.

[6] Defendant's numbering system is confusing; the Court sets forth defendant's various arguments and applies its own numbering system. In support of his claims, defendant attaches various pages from the trial transcripts as well as portions of a police report.

4

**Ground 4**

Hearsay testimony/hearsay grounds

The state witness testimony in court was by what victim has told him was not done from face value.

**Ground 5**

Victim inconsistents [sic] statement/contradictory

The victim court testimony was inconsistent with his police report.

**Ground 6**

Evidence was insufficient.

Defendant and another was [sic] arrested wearing clothes similar according to victim court testimony.

**Ground 7**

interjecting of pass [sic] life style

ther [sic] were a lots [sic] of mentioning about the defendant's prior record in the hearing of Jury.

As noted earlier, Postconviction Counsel has filed a motion to withdraw, affirming that he found no meritorious issues of law after thoroughly analyzing the record and defendant's proposed claims.

Defendant was provided the opportunity to respond to Postconviction Counsel's motion to withdraw but did not do so.

Before reviewing the claims, I set forth several standards which are applicable to this postconviction motion: those pertaining to procedural bars and those pertaining to ineffective assistance of counsel claims.

5

First, I review the procedural bars; if a procedural bar applies to an argument, then that argument should not be considered on its merits.

The applicable version of Rule 61 is that made effective June 4, 2014. That rule provides in pertinent part with regards to the procedural bars:

(i) Bars to relief. --
　(1) Time limitation. -- A motion for postconviction relief may not be filed more than one year after the judgment of conviction is final or, if it asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final, more than one year after the right is first recognized by the Supreme Court of Delaware or by the United States Supreme Court.
　(2) Successive motions. -- ***.
　(3) Procedural default. -- Any ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred, unless the movant shows
　　(A) Cause for relief from the procedural default and
　　(B) Prejudice from violation of the movant's rights.
　(4) Former adjudication. -- Any ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred.
　(5) Bars inapplicable. -- The bars to relief in paragraphs (1), (2), (3), and (4) of this subdivision shall not apply either to a claim that the court lacked jurisdiction or to a claim that satisfies the pleading requirements of subparagraphs (2)(i) or (2)(ii) of subdivision (d) of this rule.

The above-referenced pleading requirements of subparagraphs (2)(i) or (2)(ii) of subdivision (d) of Rule 61 provide:

　(i) pleads with particularity that new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted; or
　(ii) pleads with particularity a claim that a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court, applies to the movant's case and renders the conviction or death sentence invalid.

The time for asserting a claim for ineffective assistance of counsel is in a defendant's first

6

motion for postconviction relief. The standard for an ineffective assistance of counsel claim is set

forth in *Redden v. State*[7] as follows:

> To demonstrate ineffective assistance of counsel, a defendant must satisfy two requirements. First, the defendant must establish that his or her "counsel's representation fell below an objective standard of reasonableness." FN 25 Doing so requires overcoming a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " FN 26 Second, the defendant must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." FN 27 A reasonable probability requires more than a showing "merely that the conduct 'could have or might have or it is possible that [it would have]' led to a different result." FN 28 "A reasonable probability is a probability sufficient to undermine confidence in the outcome." FN 29

> > FN 25 *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

> > FN 26 *Id.* at 689, 104 S.Ct. 2052 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).

> > FN 27 *Id.* at 694, 104 S.Ct. 2052.

> > FN 28 *Neal*, 80 A.3d at 942 (quoting *Ploof v. State*, 75 A.3d 840, 867 (Del. Supr.2013)).

> > FN 29 *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

Furthermore, a defendant must make concrete allegations of unprofessional errors and

actual prejudice and substantiate them or risk summary dismissal.[8]

I now turn to defendant's claims, which Postconviction Counsel develops more fully in

his Memorandum in Support of Motion to Withdraw as Counsel Pursuant to Rule 61(e)(6) for

---

[7] 2016 WL 6311114, * 3 (Del. Oct. 27, 2016).

[8] *Younger v. State*, 580 A.2d 552, 555 (Del. 1990).

7

Petitioner Alonzo Payne ("Postconviction Counsel's Memorandum").[9]

Postconviction Counsel explains, as set forth below, defendant's assertion that the "Judge

denies the Jury note after my Attorney and Prosecutor agreed to the victims [sic] statement."

> During Mr. Payne's trial, the written out-of-court statements of Mr. Hutt and Mr. Smith were read to the jury and admitted as Court exhibits under 11 *Del. C.* § 3507. (A24-29, 60-64).[10] They were not admitted as trial exhibits and were not permitted to go with the jury into the jury room during deliberations. However during deliberations, the jury submitted a note to the Court requesting permission to view the written statements. (A213). The Court discussed the jury's request with both trial counsel and the State and found that although trial counsel did not agree that the jury should see the statements, he agreed by the nature of his presentation during closing argument by informing the jury they could see the statements when they went back into the jury room. (A204, 215).
> The State agreed that good cause existed for the jury to view the statements but was concerned with the manner in which they should be presented to the jury. (A216, 220). The Court ultimately declined to exercise its discretion, stating, "I am finding there are just too many complications of how it should be presented to the jury. So I am choosing not to exercise my discretion, which I will not permit them to see it." (A221).[11]

This claim is procedurally barred because defendant did not raise it on appeal.[12]

Furthermore, defendant has not established any of the exceptions to the procedural bar as

contained in Rule 61(i)(3)(A) and (B) or Rule 61(i)(5) exist. Accordingly, the claim fails.

However, even if defendant should overcome the procedural bar, the claim fails on the

merits for the reasons explained by Postconviction Counsel.

---

[9]Docket Entry 83.

[10]These are references to the page numbers of the Appendix to Postconviction Counsel's Memorandum.

[11]Postconviction Counsel's Memorandum at 7-8.

[12]Rule 61(i)(3).

Postconviction Counsel reviews the law regarding 11 *Del. C.* § 3507 statements.[13] As he notes, the Delaware Supreme Court has stated that

> the "default" rule is that written or tape or video-recorded § 3507 statements should *not* be admitted into evidence as separate trial exhibits that go with the jury into the jury room during deliberations although the statements may be played or read to the jury in the first instance during the course of trial....[14]

Although that is the basic rule, the trial judge has discretion to allow the jury to see the statements. Postconviction Counsel correctly argues that in this case, there was no abuse of discretion "[g]iven the concerns that were raised over how to properly present the statements to the jury, who should read the statements and the appropriate length of time for the jury to view them."[15]

In conclusion, this claim fails because it is procedurally barred and alternatively, it is meritless.

Postconviction Counsel addresses defendant's arguments that the Trial Court erred in

---

[13] In 11 *Del. C.* § 3507, it is provided in pertinent part:

**Use of prior statements as affirmative evidence.**

(a) In a criminal prosecution, the voluntary out-of-court prior statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value.

(b) The rule in subsection (a) of this section shall apply regardless of whether the witness' in-court testimony is consistent with the prior statement or not. The rule shall likewise apply with or without a showing of surprise by the introducing party.

[14]*Flonnory v. State*, 893 A.2d 507, 526 (Del. 2006). *Accord Morse v. State*, 120 A.3d 1, 12 (Del. 2015).

[15]Postconviction Counsel's Memorandum at 8.

9

admitting Smith's hearsay testimony.[16]

All claims regarding the admission of hearsay are procedurally barred because defendant did not raise them on appeal.[17] Furthermore, defendant has not established any of the exceptions

---

[16]Rules 801 through 807 of the Delaware Rules of Evidence ("DRE") address hearsay. Pertinent portions of those rules are set forth below.

**Rule 801. Definitions.**

The following definitions apply under this article:
(a) Statement. -- A "statement" is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion.
(b) Declarant. -- A "declarant" is a person who makes a statement.
(c) Hearsay. -- "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.
(d) Statements which are not hearsay. -- A statement is not hearsay if:
(1) Prior statement by witness. -- The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, or (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, or (C) one of identification of a person.

**Rule 802. Hearsay rule.**

Hearsay is not admissible except as provided by law or by these Rules.

**Rule 803. Hearsay exceptions; availability of declarant immaterial.**

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
\* \* \*
(2) Excited utterance. -- A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

[17]Rule 61(i)(3).

10

to the procedural bar as contained in Rule 61(i)(3)(A) and (B) or Rule 61(i)(5) exist. Accordingly, the hearsay arguments fail.

Even if defendant somehow overcame the procedural bar, the hearsay arguments fail on the merits, as explained by Postconviction Counsel.

Statements to which defendant has objected are Smith's statements in the police report about Smith's conversation with defendant at the robbery scene where defendant told Smith "not to worry about it" and a statement during a later encounter where defendant told Smith he did not want to hear about it, "it" being the taking of the money from Hutt.[18] As Postconviction Counsel explains, these statements were admitted pursuant to 11 *Del. C.* § 3507, and there was no improper admission. Thus, there is no merit to a claim that hearsay rules were violated.

Another hearsay objection is to Smith testifying that Hutt told Smith they robbed him.[19] This statement constituted an excited utterance to the hearsay rule and thus, was admissible.

As Postconviction Counsel explains, defendant has identified two other statements by Smith that he alleges were impermissible hearsay. The first was: "I mean my cousin was saying that he pulled a gun on him."[20] The second, as Postconviction Counsel explains, "occurred during trial counsel's cross-examination of Mr. Smith when he stated, in reference to Mr. Hutt, '[h]e actually said that he pulled his gun out on him.'(A83)."[21] Postconviction Counsel explains that

---

[18]Vol. 1 Appendix to Withdraw as Counsel Pursuant to Rule 61(e)(6) for Petitioner Alonzo Payne, A64 (hereinafter, "1 Appendix at ___").

[19]1 Appendix at A54. A previous statement to that effect was stricken because a proper foundation for an exception to the hearsay rule was not established. 1 Appendix at A47-48.

[20]1 Appendix at A58.

[21]Postconviction Counsel's Memorandum at 11.

11

these statements would have been governed by the excited utterance exception to the hearsay rule.

Postconviction Counsel then discusses two other statements Smith made:

> Mr. Smith's testimony "... my cousin saying he just got robbed, like, he got a gun" and "[h]e just told me ... [h]e pulled the gun on him and he robbed him" indicated that Mr. Hutt's statements regarding the [sic] both robbery and the gun occurred at the same time. (A77, 78). As such, the Court's ruling on the excited utterance exception would have included the statements referencing the gun as well [sic] the robbery....[22]

Thus, even if defendant should overcome the procedural bars, the claims fail on the merits because none of the statements constituted inadmissible hearsay for the reasons explained above.

In conclusion, the hearsay claims are denied because they are procedurally barred and in the alternative, they are meritless.

Defendant has advanced several ineffective assistance of counsel arguments.

One argument he makes is that trial counsel "never put in no [sic] motions that [he] ask [sic] him to put it on [his] behalf." Defendant did not set forth any specifics on this assertion. Postconviction Counsel speculates as to what defendant is arguing.[23] However, the Court will not speculate about defendant's arguments here. Where a defendant does not detail his ineffective assistance of counsel claims, the claim fails.[24]

---

[22]*Id.* at 11-12.

[23]Although the preferred practice is to obtain an affidavit of trial counsel where allegations of ineffective assistance of counsel are made, defendant has not made any specific, concrete allegations of ineffectiveness. Trial counsel would have to speculate on the assertions against him. An affidavit would be inappropriate in this situation.

[24]*Younger v. State,* 580 A.2d at 555.

12

In conclusion, this claim fails because it is too vague to consider.

Another ineffective assistance of counsel argument defendant asserts is that trial counsel was ineffective for failing to "represent [him] as he should on his cross-examining." Again, defendant does not set forth any specific argument as to error and consequently, the Court dismisses the claim summarily.[25]

Defendant argues there was insufficient evidence to convict him because Hutt never specifically identified him during trial as the individual who robbed him, Hutt's testimony was inconsistent with the police report, and Hutt's testimony indicated that another individual was arrested at the same time as defendant, wearing the same clothes.

Because defendant did not raise this insufficiency of evidence argument on appeal, it is procedurally barred.[26] Furthermore, defendant has not established any of the exceptions to the procedural bar as contained in Rule 61(i)(3)(A) and (B) or Rule 61(i)(5). Accordingly, the claim fails.

However, even if the Court did consider the insufficiency of the evidence argument, the claim fails on the merits for the reasons explained by Postconviction Counsel.

While testifying, Hutt did not point out defendant as his robber. However, Hutt did testify several times that the robber had on a white shirt and red shorts. Furthermore, numerous witnesses, including the arresting officer, testified defendant had on a white shirt and red shorts that day and at the time of his arrest. There was no testimony that any of the other robbers were wearing a white shirt and red pants although Hutt testified that another robber had on a white

---

[25]*Id.*

[26]Rule 61(i)(3).

13

shirt. There was overwhelming evidence that defendant was the robber. This claim fails.

Hutt's testimony at trial was inconsistent with his prior statements to the Georgetown Police. Postconviction Counsel provides the following examples of inconsistencies:

> For example, Mr. Hutt admitted that he left out "a couple of details that happened" in his written statement, such as the fact that one of the three individuals hit him. (A44, 45, 278). Mr. Hutt also testified that the gun was "pointed at him," despite previously telling officers that the individual had raised his shirt and placed his hand on a gun that was in his waistband. (A41, 42, 281). Additionally, Mr. Payne correctly notes that Ms. Midgette offered testimony despite having made multiple, inconsistent prior statements to law enforcement. (A285, 286).[27]

The standard for reviewing a sufficiency of the evidence challenge is set forth in *Rickett v. State*:[28]

> "... whether considering the evidence in the light most favorable to the prosecution, including all reasonable inferences to be drawn therefrom, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." FN 3
>
> > FN 3 *Forrest v. State*, 721 A.2d 1271, 1279 (Del. 1999) (citing *Barnett v. State*, 691 A.2d 614, 618 (Del. 1997).

When considering, pursuant to *Pena*, the "closeness of the case" factor in its decision on appeal, the Supreme Court concluded this was not a close case in the least:

> This factor also weighs against finding that the trial court abused its discretion. Here, three witnesses identified Payne as the person who committed the offense. In addition, the State put forth substantial circumstantial evidence suggesting Payne was guilty. FN 33 Because the case against Payne was not close, the third *Pena* factor weights against granting a mistrial.[29]

---

[27]Postconviction Counsel's Memorandum at 15.

[28]2015 WL 1289425, *2 (Del. Mar. 20, 2015).

[29]*Payne v. State, supra* at *4.

14

FN 33 Hutt told the police that the man who robbed him was wearing a white shirt and red shorts. Smith, who knew Payne, identified the man in the white shirt and red shorts as Payne. In addition, Smith recognized Payne as one of the three men who was walking away from his car when the robbery took place. Smith also testified that he approached Payne as he was walking away from the car and asked for the money back, but Payne refused. Additionally, Midgette testified that Payne ran into the apartment, hid something under the couch, and gave her money matching the description of the stolen money, namely, one of the twenty-dollar bills and one of the ten-dollar bills were torn.

As Postconviction Counsel notes:

The evidence against Mr. Payne included: testimony by Mr. Smith, a long time acquaintance of Mr. Payne, that Payne was present at the scene of the robbery and subsequently refused to return the money, testimony from Mr. Hutt that the individual who robbed him was wearing a white shirt and red shorts, testimony from several witnesses that Mr. Payne was wearing a white shirt and red shorts, testimony from the arresting officer that Mr. Payne was taken into custody wearing a white shirt and red shorts, testimony from Ms. Midgette that Mr. Payne threw money at her and hid something under the couch, the recovery of a firearm from under the same couch bearing similarities to the description of the weapon provided by Mr. Hutt, corresponding tears in the money recovered from Ms. Midgette, recovery of the car driving by Mr. Payne and present at the Service General, evidence of flight, and a video-recorded statement provided by Mr. Payne to law enforcement admitting he was at the Service General when Mr. Hutt was present.[30]

Postconviction Counsel correctly argues:

Taking into consideration the evidence against Mr. Payne, as well as the respect given to the trier of fact in resolving conflicts in testimony and weighing the evidence, the record supports the assertion that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." FN 29 Therefore, this claim is without merit.[31]

FN 29 *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

---

[30]Postconviction Counsel's Memorandum at 15-16.

[31]*Id.* at 16.

To repeat, despite the minor inconsistencies defendant points out, the evidence overwhelmingly established that defendant robbed Hutt of his money while threatening him with a gun and then hid the gun from the police. Defendant's insufficiency of the evidence argument fails on the merits.

In conclusion, this claim fails because it is procedurally barred and in the alternative, it is meritless.

A final argument defendant advances is that the jury heard "lots [sic] of mentioning about the defendant's prior record in the hearing of the jury." That statement is factually incorrect. There was only one statement which the jury heard with regard to defendant's criminal history. That was Smith's statement that when Smith first started dating Ms. Drummond, defendant had been "locked up".[32]

This claim is procedurally barred by Rule 61(i)(4) because the Supreme Court considered the issue on appeal. Furthermore, defendant has not established the existence of any exception to the procedural bar as required by Rule 61(i)(5). Accordingly, the claim fails.

Postconviction Counsel also reviewed the record and analyzed a couple of possible issues that could have been raised. That review and analysis are summarized below.

The first issue pertains to Detective Cordrey's testimony as to why fingerprint and DNA analysis was not performed on the recovered firearm.[33] Trial counsel objected to this testimony on the ground that the detective had not been identified as an expert nor had the defense been

---

[32]1 Appendix at A72.

[33]This issue appears at Vol. 2 Appendix to Withdraw as Counsel Pursuant to Rule 61(e)(6) for Petitioner Alonzo Payne, A174-186; A190-91.

16

notified that he would be testifying as an expert. The State of Delaware ("the State") argued that the testimony was not being offered as expert testimony; instead, it was offered to explain why additional testing was not undertaken. The Court ruled the testimony was admissible in response to trial counsel's raising, in his opening argument, the issue that DNA testing was not performed.

Postconviction Counsel does not review the procedural bars that would apply to this argument; instead, he reviews the merits of the argument only. First, he concludes that Detective Cordrey, because of his experience, would have been qualified as an expert witness pursuant to DRE, Rule 702.[34] He concludes no prejudice occurred from the technical violation of Delaware Superior Court Criminal Rule 16 because trial counsel undertook an extensive and thorough cross-examination of Detective Cordrey.

Postconviction Counsel concludes that even if the evidence was inadmissible, its admissibility was harmless in light of the overwhelming evidence submitted against defendant, and thus, the argument is meritless.

This claim is procedurally barred[35] and no exception to the procedural bar is advanced. Even if an exception was established and the argument was considered, the Court would deem the claim meritless for the reasons set forth by Postconviction Counsel.

The second issue Postconviction Counsel reviewed was whether a chain of custody violation occurred with regard to the gun and monies seized.[36] Detective Cordrey testified to

---

[34]DRE, Rule 702 allows a witness to be deemed an expert where that witness is "qualified as an expert by knowledge, skill, experience, training, or education...."

[35]Rule 61(i)(3).

[36]*See* 1 Appendix at A11, A12, A160, 168, 169.

17

chain of custody standards which established a reasonable probability that no tampering with the evidence occurred. Postconviction Counsel concludes:

> Given the testimony of Detective Cordrey, and taking into consideration that the possible gap in the chain of custody for both the firearm and money was not so deficient as to meaningfully increase the "likelihood of intermeddlers having tampered with [it]," a claim that the evidence should have been excluded is without merit. Relatedly, even if counsel was ineffective for failing to raise the issue on cross-examination, given the totality of the evidence against Mr. Payne, the record does not support a showing of prejudice, as Mr. Payne could have still been convicted for the same offenses even without recovery of the firearm or money. FN 45. Thus, it cannot be demonstrated that but for trial counsel's failure to cross-examine Detective Cordrey on the possible gap in the chain of custody, there is a reasonable probability Mr. Payne would not have been convicted due to the strength of the evidence presented by the State.[37]
>
> > FN 45 *See Mitchell v. State*, 984 A.2d 1194, 1196-97 (Del. 2009); *Fortt v. State*, 767 A.2d 799, 802-03 (Del. 2001).

This argument would be procedurally barred.[38] If an ineffective assistance of counsel argument was made which thereby allowed its consideration, the Court would conclude that the argument fails. In light of the overwhelming evidence against defendant, the failure to cross-examine Detective Cordrey on the chain of custody would not be sufficient to meet the prejudice prong of the ineffective assistance of counsel standard.[39]

---

[37]Postconviction Counsel's Memorandum at 22.

[38]Rule 61(i)(3).

[39]*Strickland v. Washington, supra.*

18

For the foregoing reasons, Postconviction Counsel's motion to withdraw is GRANTED and defendant's motion for postconviction relief is DENIED.

IT IS SO ORDERED.

Very truly yours,

Richard F. Stokes

cc: Prothonotary's Office
    Office of the Public Defender
    Adam D. Gelof, Esquire

19