IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE    )
          )
V.            )    I.D.: 1701018345
          )
MATEO PINKSTON,    )
          )
    Defendant.    )

Submitted: September 9, 2020
Decided: October 9, 2020

**MEMORANDUM OPINION**

*Defendant's Motion for Postconviction Relief.*
**DENIED**

*Motion to Withdraw as Counsel*
*for Petitioner Mateo Pinkston.*
**GRANTED**

Mark A. Denney, Jr., Esquire and John S. Taylor, Esquire, DEPARTMENT OF JUSTICE, Wilmington, Delaware.

Patrick J. Collins, Esquire, COLLINS & ASSOCIATES, Wilmington, Delaware.

**BUTLER, J.**

This matter was tried to a jury in 2017 and resulted in convictions of the defendant on charges of Robbery 1st Degree and several weapons offenses. The defendant appealed, the convictions were affirmed and he filed a motion for a new trial in this Court, alleging ineffective assistance by his trial counsel. New counsel was appointed to represent him in these proceedings and counsel has now moved with withdraw his appearance, conceding that his assiduous review of the record has failed to uncover any good faith basis for arguing in favor of Defendant's position. I must now consider not only counsel's motion to withdraw, but also Defendant's original Rule 61 motion and any additional materials he wishes to propound that he believes was not raised by counsel.

## FACTS AND HISTORY

The basic facts of the robbery are fairly straightforward. As recited by the Supreme Court in its affirmance, they are these:

> On January 29, 2017, Corporal Steven Bender of the Wilmington Police Department responded to a dispatch regarding a robbery at 704 North Tatnall. Corporal Bender spoke to a woman there who reported that a man followed her into her apartment building after she returned from a store on 7th and Washington, attacked her in the hallway, threatened her with a knife with a corkscrew on one end, and robbed her. She described the man as light-skinned with facial hair, red sneakers, and a camouflage jacket. After the man robbed her, the woman argued with him and took his cell phone.
>
> Based on his familiarity with people in the area and the description of the red sneakers and camouflage jacket, Sergeant Bender believed the man was Pinkston. The woman, who had seen the man around the store

1

before, identified Pinkston in a photographic line-up. Video footage from the store showed the woman entering and leaving the store on 7th and Washington. The footage also showed Pinkston heading in the same direction as the woman when she left the store.

Later in the day on January 29, 2017, Corporal Donald Cramer of the Wilmington Police Department was looking for Pinkston to execute an arrest warrant.

He found Pinkston outside the store on 7th and Washington. Corporal Cramer pulled up to the store in his marked police car and called out to Pinkston. When Pinkston began to walk away, Corporal Cramer ordered him to stop. Pinkston fled.

Corporal Cramer chased Pinkston and deployed his Taser to stop him. At the time of his arrest, Pinkston had a corkscrew wine opener with a knife on one end. He was wearing black and blue, not red, sneakers. Pinkston had a cell phone charger that would have worked with the cell phone taken by the robbery victim. An analysis of the SIM card in the cell phone showed contact information for another person with the last name Pinkston. The jury found Pinkston guilty of Robbery in the First Degree, two counts of PDWDCF, Burglary in the Second Degree, and Resisting Arrest.[1]

The Defendant was sentenced to an outsized period of years in prison, due in no small part to the fact that he qualified for, and was sentenced as, a habitual offender. Partly in light of the substantial prison sentence, when Defendant filed a *pro se* motion for postconviction relief, the Court appointed counsel for him to ensure that his rights had been appropriately protected.[2]

---

[1] *Pinkston v. State*, 191 A.3d 290, 2018 WL 2386942, at *1 (Del. Jul. 19, 2018) (TABLE).

[2] Pursuant to Rule 61(e)(2), a defendant whose conviction has been affirmed on charges including Class B felonies has a right to appointed counsel. Super. Ct. Crim. R. 61(e)(2).

In Pinkston's *pro se* motion, he made but one claim: that his trial counsel "did not object or cure the state's repeated[ly] use of negative character references."[3] Despite a full review, his counsel was unable to locate any page of the trial transcript in which the State made negative character references to the Defendant.[4]

In addition to postconviction counsel's own review of the full trial transcript and his finding no good faith basis to press other arguments attacking Pinkston's conviction, Pinkston was invited to add whatever additional comments he wished, as permitted by Super. Ct. Crim. R. 61(e)(7).[5] Defendant's *pro se* pleading, relying on *White v. State*,[6] argues that the jury should have been given a lesser included offense instruction of Robbery 2d degree and his postconviction counsel should have raised this alleged defect in an amended Rule 61 motion.

In *White*, the defendant was arrested after running down the street, firing a gun and not looking where the gun was aimed. He went to trial on a charge of Reckless Endangering 1st degree—recklessly causing a risk of death.[7] In the Postconviction proceeding, the argument was that trial counsel should have sought a lesser included offense instruction of Reckless Endangering 2d degree—recklessly

---

[3] R. at A174.
[4] Mot. to Withdraw 13.
[5] The Rule provides "The motion shall explain the factual and legal basis for counsel's opinion and shall give notice that the movant may file a response to the motion within 30 days of service of the motion upon the movant."
[6] 173 A.3d 78 (Del. 2017).
[7] 11 *Del. C.* § 604.

causing a risk of physical injury.[8] Trial counsel admitted that he mistakenly believed Reckless Endangering 1st Degree included both "death" and "serious physical injury" and that any gun play would be included. The Supreme Court reversed the conviction, finding that there was no tactical or strategic reason not to request a lesser included Reckless Endangering 2d Degree instruction and that the evidence may have supported such a verdict by the jury.

In this Robbery 1st trial, the Defendant was charged with robbery under 11 *Del. C.* § 832(a)(2), which requires proof that, while engaged in the commission of a theft, the perpetrator "displays what appears to be a deadly weapon or represents by word or conduct that the person is in possession or control of a deadly weapon." Thus, it is not necessary that the defendant be actually armed with a deadly weapon, only that he manifest to the crime victim, by word or conduct, that he is armed with a deadly weapon.[9] The critical difference between a Robbery 1st degree and a Robbery 2d degree is the "manifestation" of a deadly weapon.[10]

---

[8] 11 *Del. C.* § 603.
[9] *See Mitchell v. State*, 984 A.2d 1194, 1197 (Del. 2009) ("Under § 832(a), the State must only prove that the victim reasonably perceived a threat and the defendant's manifestation of a threat to use a deadly weapon."); *Walton v. State*, 821 A.2d 871, 877 (Del. 2003) ("[When Section 832(a)(2) was amended] the focus of the aggravating factor shifted to the victim's perception . . . .").
[10] 11 *Del. C.* § 831.

Here, the specific implement employed by the Defendant was recovered from him a few hours later. It was described by the Supreme Court as a "corkscrew wine opener with a knife on one end." A "deadly weapon" as used in the Robbery 1st degree statute is defined by 11 *Del. C.* § 222 as

> a knife of any sort (other than an ordinary pocketknife carried in a closed position), switchblade knife, billy, blackjack, bludgeon, metal knuckles, slingshot, razor, bicycle chain or ice pick or any "dangerous instrument", as defined in paragraph (4) of this section, which is used, or attempted to be used, to cause death or serious physical injury. For the purpose of this definition, an ordinary pocketknife shall be a folding knife having a blade not more than 3 inches in length.

A "dangerous instrument as defined in paragraph (4) of this section" includes "any instrument, article or substance which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious physical injury."[11]

Thus, any confusion about whether the Defendant displayed the blade end of the knife or the sharp end of the corkscrew is of no moment for the purpose of analyzing his liability – either end will get him convicted of Robbery 1st degree if the jury believed that he displayed it to get money.

Defendant directs the Court to the trial transcript, page 52, wherein the victim described the instrument thus:

> He had a little knife came out like this with a little hook on top.

---

[11] 11 *Del. C.* § 222(4).

Okay.

So that, but he didn't, he didn't end up poking me or nothing, but he did threaten me and put it to me.

This testimony is not helpful to the Defendant. He need not have "poked" the robbery victim, threatening her with it suffices to satisfy the "display" element of Robbery 1st degree.

Defendant cites to a couple of other points in the transcript in which the victim described the implement as either a corkscrew or a knife and that he either put it to her neck or merely threatened her, his point being "it was inconsistencies within the statements about if a knife was present." But there really was no inconsistency in whether the robber was armed with an instrument and used it to threaten to cause harm to the victim—the necessary ingredients to a robbery 1st charge. The inconsistencies referenced by Defendant do not further his argument that the evidence in any way supported a robbery 2d conviction. The Court therefore cannot find ineffective assistance of trial counsel in his failure to request a lesser-included offense of robbery 2d degree. Had he made such a request, it would have been denied. Counsel cannot be faulted for failing to engage in a fruitless endeavor.

## CONCLUSION

Finding no merit in Defendant's *pro se* additions to his counsel's motion to withdraw and in light of counsel's brief finding no arguable issues to support his

6

motion under Rule 61, Defendant's request for relief under Rule 61 is **DENIED** and counsel's motion to withdraw is **GRANTED**.

      **IT IS SO ORDERED**.

_____
Judge Charles E. Butler
